Kimberly T. DANIELS and Willie Daniels, Appellants,

v.

Christopher A. YANCEY, M.D., and Diagnostic Clinic of Longview, P.A., Appellees.

No. 06–05–00010–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 6, 2005.

Decided Oct. 25, 2005.

David M. O'Dell, Law Office of David M. O'Dell, M.D., J.D., Dallas, for appellants.

Mary–Olga Lovett, Tracey S. Dry, Stinnett Thiebaud & Remington, LLP, Houston, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Kimberly T. and Willie Daniels appeal from a take-nothing judgment in favor of Christopher A. Yancey, M.D., and Diagnostic Clinic of Longview, P.A (collectively, Yancey). The Danielses complain on appeal that the trial court erred in excluding certain testimony from the jury's consideration. We deny all points of error and affirm the judgment of the trial court.

FACTUAL BACKGROUND

Dr. Christopher Yancey performed a hysterectomy on Kimberly Daniels. Following the surgery, Kimberly began to suffer from abdominal pain and bowel problems. She returned to the hospital. Dr. Lee Merritt, in consultation with Dr. Yancey, determined that it was necessary to remove a section of Kimberly's small intestine to cure her affliction. This surgery, in turn, caused Kimberly further medical problems.

The Danielses allege that Dr. Yancey perforated Kimberly's small intestine during the hysterectomy, thereby breaching the proper standard of care. The Danielses claim that this alleged breach of duty caused Kimberly's subsequent medical problems. This claim is the basis of the underlying lawsuit.

ISSUES

The trial court prohibited the Danielses' expert witness, Dr. Robert Kovac, from testifying about his observations regarding certain pathology slides relating to Kimberly's surgery. Dr. Kovac is a member of the American Board of Obstetrics and Gynecology. The trial court also excluded testimony regarding a statement purportedly made by Dr. Merritt to Kimberly before the second surgery. These two rulings by the trial court form the basis of the Danielses' appeal.

*Motion to Limit Testimony*

■ The Danielses assert that the trial court erred in granting Yancey's motion to limit the testimony of Dr. Kovac because the motion was untimely. In support of this, the Danielses contend the motion was not filed within the time limitations prescribed by the former TEX.REV.CIV. STAT. ANN. art. 4590i, § 14.01(e). *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 2, Tex. Gen. Laws 988, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, Tex. Gen. Laws 884 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.401(e) (Vernon 2005)).[1] We hold that the Danielses failed to raise this issue at the trial court level and thereby waived any possible error on appeal.

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to

---

1. This statute applies to medical malpractice litigation. It requires a pretrial objection to the qualifications of an expert witness to be made within twenty-one days after the date that the objecting party receives a copy of the witness' curriculum vitae or within twenty-one days after the witness is deposed.

the trial court by a timely request, objection, or motion. Tex.R.App. P. 33.1(a). The record must also show that the trial court ruled or refused to rule on the complaint. If the trial court refused to rule on the complaint, the record must show that the complaining party objected to the refusal. *Id.*

It is clear from the record that, within the motion to limit expert testimony, and during the hearing on the motion, there was but one issue in contention: whether the Danielses' expert witness, Dr. Kovac, was qualified to testify about pathology slides.

Dr. Yancey, the proponent of the motion, began the hearing by stating, "The basis of our motion is *Broders v. Heise,* the well-settled law of this state through the Texas Supreme Court, asking that expert witnesses be limited in medical malpractice cases to testify in their area of specialty." Yancey argued that, "Dr. Kovac is not now nor has he ever been even board eligible." Yancey went on to say, "[H]e doesn't even read his own patients' Pap smears.... [N]o one in a medical setting, has ever asked Dr. Kovac to review pathology slides and write a report for them, because they know that he's not qualified to do that." Yancey finished the argument by declaring, "[W]e would ask that his testimony be limited only to obstetrics and gynecology, the area in which he has been proven an expert witness."

The Danielses, opposing the motion, focused the argument squarely on Dr. Kovac's credentials as well. The Danielses began, "[U]nder the Rules of Evidence, testimony by experts should be based upon their qualifications by knowledge, skill, experience, training or education; Rule of Evidence 702."

The court interjected, "[W]hen you have an expert who—an OB/GYN who doesn't even read his own Pap smear slides, tell me why I should give him an area of expertise in front of a jury."

The Danielses continued to point out Dr. Kovac's qualifications, "Dr. Kovac teaches residents about pathology slides including bowel." The Danielses directed the trial court to deposition testimony in which Dr. Kovac described his qualifications. However, the Danielses failed to mention, even once, the time limits imposed by Article 4590i.

■ The only brief reference to the time limitations of Article 4590i was by counsel for Yancey, the *proponent* of the motion to limit the testimony. However, this is analogous to the well-established rule that one party may not use another party's objection to preserve an error where the record does not reflect a timely expression of an intent to adopt the objection. *Scott Fetzer Co. v. Read,* 945 S.W.2d 854, 871 (Tex.App.-Austin 1997), *aff'd, Read v. Scott Fetzer Co.,* 990 S.W.2d 732 (Tex.1998).

Further, the trial court made it clear that it was ruling solely on the qualifications of Dr. Kovac and not on any other issue. During the hearing, the trial court stated, "[M]y consideration is limited to his area of expertise as far as being able to testify about these pathology slides." The trial court even gave the Danielses the opportunity to present an alternative argument by stating, "And at this point, unless you have something else to show me, I'm going to grant the defendant's request and limit his testimony on the pathology." The Danielses never presented another argument to the trial court.

Before issuing its ruling, the trial court again focused on Dr. Kovac's qualifications, saying, "[F]or specialty testimony, it looks to me that they have to basically be engaged in that as their specialty, such as, in this case, pathology." And on issuing

its ruling, the trial court stated, "[M]y ruling is going to be that I'm going to limit his testimony and that he's not going to be able to go into—unless the door is opened, he's not going to be able to go into the pathology slides."

There is nothing in the record to indicate the trial court was presented with, or considered, the contention that the Danielses now assert on appeal. The Danielses never filed a response to Yancey's motion to limit the testimony of Dr. Kovac. At the hearing on the motion, Daniels never complained or objected that the motion was in violation of statutory time limits. In fact, during that hearing, the Danielses' counsel stated, "I do not question defense's ability to challenge the credibility of my expert based on his knowledge, training and experience. . . ." Because the Danielses failed to present this complaint to the trial court, this issue is waived and we will not consider it.

■ Alternatively, the Danielses assert that the motion was not filed within the time limitations prescribed by the parties' agreed scheduling order. That agreed order set October 10, 2003, as the deadline to file any motion to exclude or limit expert testimony and November 10, 2003, as the trial date. Yancey's motion was not filed until January 7, 2004.

On November 6, 2003, both parties filed an agreed motion for continuance. The trial court then reset the trial date to January 12, 2004.

The agreed motion for continuance expressly mentioned Dr. Kovac's review of the pathology slides and his new opinions based on that review. The motion's stated purpose was to provide extra time for further discovery on that issue and other issues, and to extend the deadline for mediation, as well as other matters.[2] Therefore, one of the purposes of the agreed motion for continuance was to allow discovery after the deadlines previously imposed by the agreed scheduling order.

Further, several courts have held that a trial resetting has the effect of nullifying a deadline set by a scheduling order. *See J.G. v. Murray*, 915 S.W.2d 548, 550 (Tex. App.-Corpus Christi 1995, no writ). Thus, the continuance effectively nullified the deadlines set by the agreed scheduling order.

Dr. Yancey's motion could not have violated the deadlines set by the agreed scheduling order because it was filed after those deadlines ceased to exist. Accordingly, we dismiss the Danielses' assertion that Yancey's motion was not filed within the time limitations prescribed by the agreed scheduling order and deny the Danielses' first point of error.

*Qualifications of Expert Witness*

■ While Dr. Kovac testified extensively, the Danielses assert the trial court erred in ruling that Dr. Kovac was not qualified to testify as an expert concerning pathology slides. At issue were Dr. Kovac's conclusions based on his review of pathology slides of Kimberly's bowel. We hold that the trial court did not err in limiting Dr. Kovac's testimony, and we deny the Danielses' second point of error.

■ The determination of whether an expert witness is qualified to testify is left largely to the trial court's discretion, and we will not disturb it on appeal absent a showing that the court abused its discretion. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex.1996); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558

---

**2.** Along with setting October 10, 2003, as the deadline to file a motion to limit expert testimony, the agreed scheduling order also set October 10 as the deadline to conduct all written discovery and depositions, as well as the deadline to conduct mediation.

(Tex.1995). In determining whether an abuse of discretion occurred, we look to see whether the trial court acted without reference to guiding principles or rules. *Robinson,* 923 S.W.2d at 558. A reviewing court cannot conclude that a trial court abused its discretion merely because it would have ruled differently. *Id.; Purina Mills, Inc. v. Odell,* 948 S.W.2d 927, 932 (Tex.App.-Texarkana 1997, writ denied).

■■ The proponent of the expert witness bears the burden of showing that the expert witness is qualified and that the testimony is relevant to issues in the case, based on a reliable foundation, and will assist the trier of fact. *Robinson,* 923 S.W.2d at 556. The offering party is required to establish that the expert has the knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Broders,* 924 S.W.2d at 153. In addition, the underlying foundation on which that opinion is based must be reliable. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Robinson,* 923 S.W.2d at 555.

■ Yancey contends that the Danielses failed to present any evidence to the trial court before or during trial that would support Dr. Kovac's qualifications, thereby waiving appeal of this issue. We disagree that this issue was waived, but find the trial court did not abuse its discretion in excluding Dr. Kovac's testimony regarding pathology slides.

At the time the motion to limit Dr. Kovac's testimony was presented to the trial court before the trial started, the trial court reviewed and considered deposition testimony from Dr. Kovac on this issue. That evidence showed that Dr. Kovac at times reviewed pathology slides, that it was his pattern to review a slide of the

bowel in the course of gynecologic surgery, and that he usually reviewed the slides with a physician who was board certified in gynecologic pathology. During the trial, the Danielses offered, and the trial court excluded, a report written by Dr. Kovac opining that the pathology slides of Kimberly confirmed his previous belief that the hysterectomy was unnecessary and that an unrecognized bowel perforation led to the removal of a substantial amount of her small bowel. Even though the Danielses presented some evidence of Dr. Kovac's qualifications to interpret pathology slides and therefore the issue was not waived, the evidence on that subject was very abbreviated. When the report of Dr. Kovac was offered and excluded, his curriculum vitae had also been admitted into evidence, but it did not contain specific information regarding pathology credentials. Dr. Kovac may be qualified to interpret pathology slides. However, based on the record before the trial court as summarized above, the trial court acted within its discretion in finding that the evidence was inadequate to establish that Dr. Kovac had the requisite knowledge, skill, experience, training, or education regarding the interpretation of pathology slides to qualify him to give an opinion on that specific subject. *See Broders,* 924 S.W.2d at 153.

■ Even if the testimony of Dr. Kovac was improperly excluded, we do not believe that such an error would be harmful. "No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment." Tex.R.App. P. 44.1(a)(1).

The Danielses argue that the exclusion of Dr. Kovac's testimony concerning the pathology slides resulted in the "exclusion

of Appellants' only witness to the issue of causation of a bowel perforation...." We disagree. Dr. Kovac testified at length concerning his opinion that a bowel perforation occurred during Dr. Yancey's surgery of Kimberly. An excerpt of that testimony follows:

A. I strongly believe that there was a hole that was in the intestine of this—was made which caused her subsequent problems.

Q. You think the hole occurred during Dr. Yancey's surgery?

A. I think it did.

Dr. Kovac further testified that the adhesion disease and obstruction and the necessity to remove fifty centimeters of Kimberly's small bowel were due to an unrecognized perforation of the small bowel at the time of the hysterectomy, which caused leaking into the abdominal cavity. He further stated that, at the time of the surgery to remove part of the intestine, Dr. Yancey and Dr. Merritt opened the intestine looking for a perforation. This evidence was utilized by the Danielses' counsel in his argument to the jury when he stated that puncturing of the bowel was a breach of the standard of care. The only limitation placed on Dr. Kovac's testimony was that he was not allowed to interpret the pathology slides.

Considering all the evidence from Dr. Kovac that was admitted, even if the limitation of Dr. Kovac's testimony was error, we do not find that such limitation "probably caused the rendition of an improper judgment." *See id.* Accordingly, we deny the Danielses' second point of error.

*Exclusion of Hearsay Testimony*

The Danielses asserts that the trial court erred in excluding certain testimony from Yancey's witness, Dr. Merritt. We hold that the trial court did not err in excluding the testimony.

■ The Danielses' counsel sought to ask Dr. Merritt whether he had told Kimberly, "Dr. Yancey is scared to death that he's done something wrong to you." The trial court prohibited the Danielses from introducing the statement. The court held that the statement was hearsay and no exception to the hearsay rule applied.

The admission or exclusion of evidence is a matter within the sound discretion of the trial court. Thus, we review this issue under an abuse of discretion standard. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995).

The Danielses' only argument at trial, and now on appeal, is that the statement is not hearsay, or that if it is hearsay, it falls within the "present sense impression" exception to the hearsay rule. *See* TEX.R. EVID. 803(1). Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX.R. EVID. 801(d). The trial court could have reasonably found that the statement at issue was being offered to prove the truth of the matter asserted—that Dr. Yancey was afraid he had done something wrong to Kimberly.

■ One of the exceptions to the hearsay rule is for present sense impressions. A present sense impression is a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. TEX.R. EVID. 803(1). The rationale for the exception stems from the statement's contemporaneity. *Rabbani v. State,* 847 S.W.2d 555, 560 (Tex.Crim.App. 1992). Without probative evidence in the record which establishes the amount of time between Dr. Merritt's statement and his meeting with Dr. Yancey, we cannot conclude that the statement falls within this exception. *See 1.70 Acres v. State,* 935

S.W.2d 480, 489 (Tex.App.-Beaumont 1996, no writ). The Danielses point us to no such evidence, nor can we find any in the record, which would establish the contemporaneity of Dr. Merritt's statement.

■ Even if such evidence was present in the record, it is not clear how Dr. Merritt's statement would fit within this particular exception to the hearsay rule.[3] Therefore, we cannot conclude the trial court abused its discretion in finding that the statement did not meet the requirements of the present sense impression exception to the hearsay rule. Accordingly, we deny the Danielses' final point of error.

Having denied all of the Danielses' points of error, we affirm the judgment of the trial court.

---

3. A present sense impression relates to a statement describing an event or condition that was perceived by the person making the statement. It is not readily apparent that Dr. Yancey's alleged fear that he had caused harm to Kimberly would meet the standard definition of an "event" or "condition."