

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00350-CV
_____

IN THE INTEREST OF A.S., A CHILD

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 75,619-L1, Honorable Jack M. Graham, Presiding

May 3, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Mother, appellant, appeals an order terminating her parental rights to A.S.[1] Mother raises two issues on appeal which concern the associate judge's authority to preside over the final hearing on termination and sufficiency of the best interest evidence supporting termination. We affirm.

*Issue One — Section 201.005 of Family Code*

Section 201.005(c) states that:

---

[1] A.S.'s father relinquished his parental rights, resulting in entry of an order terminating his parental relationship with the child. He did not appeal.

> A party must file an objection to an associate judge hearing a trial on the merits or presiding at a jury trial not later than the 10th day after the date the party receives notice that the associate judge will hear the trial. If an objection is filed, the referring court shall hear the trial on the merits or preside at a jury trial.

TEX. FAM. CODE ANN. § 201.005(c) (West 2020). Through its original petition at bar, the Department objected "to the assignment of this matter to an associate judge for a trial on the merits or presiding at a jury trial." Mother did not join that objection or otherwise lodge her own. Furthermore, the proceeding was not returned to or tried by the referring court, but rather by the associate judge. Mother now contends that 1) she relied on the Department's objection and 2) the proceeding should have been returned to the referring court.[2] Because it was not, she allegedly is entitled to a new trial. For the reasons mentioned below, we conclude that the issue was not preserved for review.

First, for a complainant to preserve error on appeal, "the record must show that . . . [his or her] complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1). Furthermore, "[o]ne party may not use another party's objection to preserve an error where the record does not reflect a timely expression of an intent to adopt the objection." *Daniels v. Yancey*, 175 S.W.3d 889, 892 (Tex. App.—Texarkana 2005, no pet.) (citing *Scott Fetzer Co. v. Read*, 945 S.W.2d 854, 871 (Tex. App.—Austin 1997), *aff'd*, 990 S.W.2d 732 (Tex. 1998)); *accord In re G.M.G-U.*, No. 06-16-00075-CV, 2017 Tex. App. LEXIS 2256, at *38 n.9 (Tex. App.—Texarkana Mar. 16, 2017, pet. denied) (mem. op.) (stating the same). Mother neither invoked section 201.005(c) nor adopted the Department's invocation of same.

---

[2] Mother did not cite us to anything of record indicating that she "relied" on the Department's objection and, therefore, withheld her own.

2

Next, Mother first raised the issue before us through an amended motion for new trial. These circumstances too raise a barrier to her complaint. In so observing, we allude to the timeliness aspect of the rules about preserving complaints for review. It requires the complainant to raise his objection at the first or earliest opportunity available so that the trial court has the chance to consider it. *See Mohamed Ahmed El-Rayes v. Jong Lee*, No. 05-19-00881-CV, 2020 Tex. App. LEXIS 10395, at *9–10 (Tex. App.—Dallas Dec. 30, 2020, no pet.) (mem. op.). This requirement has no greater importance than in a proceeding to end parental rights. Indeed, our Legislature intended that such cases be expeditiously resolved, thereby furthering the child's interest in a final decision and placement in a safe and stable home. *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003). To wait until after the final judgment is signed by the referring court to complain about the associate judge adjudicating the dispute hardly fosters that legislative intent. Rather, it provides opportunity for gamesmanship and invites litigants to take a "wait and see" approach before complaining. If they win, there is no need to complain. If they lose, then 1) complain, 2) cause all that transpired to be for naught, and 3) obtain another bite at the proverbial apple. Such tactics are not favored. *See Ward v. Lamar Univ.,* 484 S.W.3d 440, 450 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (observing that no litigant should feel free to gamble on winning a favorable ruling on the merits while concealing alleged issues in the event of a loss). Mother's first opportunity to complain about the associate judge trying the matter arose no later than when the associate judge called the case for trial. Having said nothing then, she lost her chance to object about it on appeal. To hold otherwise here would be to risk rewarding potential gamesmanship, condone delay, and thwart legislative intent urging the expeditious disposition of termination suits.

3

*Issue Two—Sufficiency of the Evidence to Support Best Interest*

Through her second issue, Mother argued that the evidence was insufficient to support the trial court's finding that termination was in A.S.'s best interest. We disagree and overrule the issue.

Texas Family Code section 161.001(b) permits termination of parental rights if clear and convincing evidence illustrates that a parent engaged in one or more of the enumerated grounds for termination and that termination is in the best interest of the child. *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam). Because Mother challenged only the court's best interest finding, she implicitly conceded that sufficient evidence supported the findings underlying the statutory grounds for termination.[3] Moreover, that evidence may be considered in assessing the best interests of the child.

In determining the best interest of a child, courts apply the *Holley* factors to shape their analysis. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). They include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the

---

[3] Pursuant to the Texas Supreme Court opinion in *In re N.G.*, we generally review the trial court's findings under section 161.001(b)(1)(D) and (E) when challenged. This is so because of the potential future consequences to a parent's parental rights concerning another child. *In re N.G.*, 577 S.W.3d at 235–37. Here, Mother's use of drugs and alcohol including overdoses and her unwillingness to stop using same is sufficient evidence establishing § 161.001(b)(1)(D) and (E) of the Texas Family Code. *See In re B.C.A.*, No. 07-20-00258-CV, 2021 Tex. App. LEXIS 58, at *6 (Tex. App.—Amarillo Jan. 6, 2021, no pet.) (mem. op.); *see also In re V.A.*, No. 07-17-00413-CV, 2018 Tex. App. LEXIS 1521, at *10 (Tex. App.—Amarillo Feb. 27, 2018, no pet.) (mem. op.) (stating that a parent's continued use of drugs demonstrates an inability to provide for the child's emotional and physical needs and a stable environment warranting termination).

individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* These factors are not exclusive. Nor does the absence of evidence proving one or more of them *ipso facto* preclude a finding that the child's best interests favor termination if the existing evidence of record nonetheless supports that conclusion. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). We further note as a factor meriting consideration the old adage about history repeating itself. That is, a trier of fact may measure a parent's future conduct by his or her past acts. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). That said, we turn to the record.

It shows Mother has a significant history of domestic violence, drug and alcohol use, and untreated mental health issues. A.S. was present during instances where these issues showed themselves. Such, alone, may support a finding that termination is in the best interest of the child. *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's drug use supports a finding that termination is in best interest of the child). Yet, there is more. The Department also introduced evidence of Mother's criminal activity, her multiple (6) attempted suicides and ensuing psychiatric hospitalizations related thereto, her bipolar disorder which can negatively impact the life of her offspring, her penchant for mixing medications with alcohol, her desire to have a continuing relationship with A.S.'s stepfather despite his violent conduct and imprisonment, her deceit regarding her desire for an ongoing relationship with stepfather, her extensive history of emotional instability, her personality disorder, and her history of relationship instability. According to one witness, her mental condition involved "core

5

characterological problems" normally requiring "extensive and ongoing intervention for there to be significant change."

We further add that A.S. was approximately thirteen years old at the time of trial and had witnessed and felt the effects of her mother's and stepfather's activities for much of her life. She experienced sleep issues and restlessness. At the time of trial, A.S. resided with and bonded to her grandmother in Illinois. Her brother B.F. also lived with them. Efforts were being made to ameliorate her sleep issues, and the child was progressing and improving. So too was she happy and grateful to be with her grandmother. Evidence also indicated that A.S. sought security and safety. The latter were found living with her grandmother. Consequently, A.S. did not want to return to Texas and resume living with Mother.

Based on the foregoing evidence, we find the evidence clear and convincing and more than sufficient to enable a fact-finder to form a firm conviction and belief that terminating Mother's parental rights was and is in A.S.'s best interest. Thus, the evidence supporting the trial court's decision is both legally and factually sufficient.

Having overruled Mother's issues, we affirm the judgment terminating her parental rights to A.S.

Per Curiam

6