ACCEPTED
01-15-00530-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/26/2015 5:01:06 PM
CHRISTOPHER PRINE
CLERK

# NO. 01-15-00530-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
6/26/2015 5:01:06 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS AT HOUSTON

*In re* **Sunset Nursing Home, Inc.,**

### *Relator*

Original Proceeding on Petition for Writ of Mandamus
from Cause No. 72817 in the 239th Judicial District
Court of Brazoria County, Texas
(Hon. Patrick Sebesta, Presiding)

GRETHER, PAUL HEINIG, PLANTATION HEALTH CARE, INC., SARA RICHARDS, AMY STEWART, COUNTRY VILLAGE CARE, INC., AND GRETHER HEALTH CARE FACILITIES, L.L.C.'S **RESPONSE TO RELATOR'S PETITION FOR WRIT OF MANDAMUS**

Breck Harrison
State Bar No. 24007325
bharrison@jw.com
Scott W. Weatherford
State Bar No. 24079554
sweatherford@jw.com
JACKSON WALKER L.L.P.
100 Congress Ave., Ste. 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – Fax

ATTORNEYS FOR REAL PARTIES IN INTEREST

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties before the trial court and the names and addresses of all trial counsel and appellate counsel:

1.  Plaintiff in the trial court (Relator in this Court) and counsel:

    **Sunset Nursing Home, Inc.**

    *Represented by:*

    Felicia Harris
    State Bar No. 24002438
    fharris@burlesonllp.com
    Burleson L.L.P.
    700 Milam, Suite 1100
    Houston, Texas 77002
    Telephone: (713) 358-1700
    Facsimile: (713) 358-1717

    Brandy R. Manning
    State Bar No. 24029703
    brmanning@burlesonllp.com
    Burleson L.L.P.
    223 W. Wall St., Suite 400
    Midland, Texas 79701
    Telephone: (432) 253-8600
    Facsimile: (432) 253-8601

2.    Defendants[1] in the trial court (Real Parties in Interest in this Court) and counsel:

**Rebecca Ann, Inc.**
**Donald Grether**
**Paul Heinig**
**Plantation Health Care, Inc.**

*Represented by:*

Breck Harrison
State Bar No. 24007325
bharrison@jw.com
Scott W. Weatherford
State Bar No. 24079554
sweatherford@jw.com
JACKSON WALKER L.L.P.
100 Congress Avenue,
Suite 1100
Austin, Texas  78701
Telephone:  (512) 236-2000
Facsimile:  (512) 236-2002

Justin R. Gilbert
State Bar No. 24043691
justingilbert@gilbertfurey.com
GILBERT & FUREY
222 N. Velasco, Suite A
Angleton, Texas 77515
Telephone: (979) 849-5741
Facsimile: (979) 849-7729

---

[1] Although these parties initiated the underlying lawsuit as plaintiffs, the trial court recently granted Relator's Motion to Realign the Parties and re-classified Real Parties in Interest as Defendants.

3.    Former[2] Third-Party Defendants in the trial court (Real Parties in Interest in this Court) and counsel:

**Sara Richards**
**Amy Stewart**
**Grether Health Care Facilities L.L.C.**
**Country Village Care, Inc.**

*Represented by:*

Breck Harrison
State Bar No. 24007325
bharrison@jw.com
Scott W. Weatherford
State Bar No. 24079554
sweatherford@jw.com
JACKSON WALKER L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas  78701
Telephone:  (512) 236-2000
Facsimile:  (512) 236-2002

Justin R. Gilbert
State Bar No. 24043691
justingilbert@gilbertfurey.com
GILBERT & FUREY
222 N. Velasco, Suite A
Angleton, Texas 77515
Telephone: (979) 849-5741
Facsimile: (979) 849-7729

**Stephen Coleman**

*Represented by:*

Zandra Foley
State Bar No. 24038085
zfoley@thompsoncoe.com

---

[2] These parties were dismissed pursuant to the trial court's May 5, 2015 consolidated order granting Real Parties' Motion to Strike (the "Motion"). (R. 2).

Andrew Johnson
State Bar No. 24060025
ajohnson@thompsoncoe.com

THOMPSON, COE, COUSINS & IRONS, L.L.P.
One Riverway, Suite 1400
Houston, Texas 77056
Telephone:  (713) 403-8210
Facsimile:  (713) 403-8299

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL ...........................................................i

TABLE OF CONTENTS.....................................................................................v

TABLE OF AUTHORITIES ........................................................................... vii

STATEMENT OF THE CASE...................................................................... xiii

STATEMENT REGARDING ORAL ARGUMENT ....................................xiv

REQUEST FOR EXPEDITED CONSIDERATION ......................................xv

BRIEF REFERENCES ...................................................................................xvi

REPLY TO ISSUES PRESENTED ............................................................. xvii

STATEMENT OF FACTS ................................................................................1

    A.    Relator sought to expand the underlying lawsuit from a commercial lease dispute to an overarching conspiracy theory..................................................................................4

    B.    Relator engaged in virtually unimpeded discovery throughout the litigation.................................................5

    C.    The trial court correctly granted Real Parties' Motion to Strike. ......................................................................6

SUMMARY OF THE ARGUMENT ................................................................8

STANDARDS OF REVIEW AND APPLICABLE LAW....................................10

ARGUMENT ..................................................................................................13

    I.    Relator's Petition and Accompanying Record Are Procedurally Deficient. ..............................................................13

    II.    Respondent Did Not Abuse His Discretion in Granting Real Parties' Motion to Strike Relator's Amended Pleadings. ...................17

        A.    Respondent correctly dismissed Relator's Amended Pleadings. ............................................................17

            1.    The Amended Pleadings violate Rule 63. ......................17

            2.    The continuance of the trial date had no effect on the deadline to amend pleadings...........................................23

            3.    The Amended Pleading violates Rule 38. ......................26

v

4. Rule 91a did not afford Relator an "absolute right" to file the Amended Pleadings. ...........................27

B. Relator has not met its heavy burden of establishing the trial court clearly abused its discretion by striking the Amended Pleadings. ...............................28

1. Considering the facts and circumstances of the suit, the trial court did not clearly abuse its discretion. ........28

2. Relator has not met its heavy burden of establishing no adequate remedy by appeal. .......................31

III. The Trial Court Has Not Abused Its Discretion in Setting Proper Limits on Relator's Abusive and Harassing Discovery Efforts. .........33

A. Several issues raised by Relator are moot. ...............33

B. Relator fails to identify specific orders from which it requests relief. ...............................35

C. The Court set proper limits on Relator's request for immaterial and irrelevant policies and procedures. .................36

D. Relator has not demonstrated that it lacks an adequate remedy by appeal. ...............................38

CONCLUSION AND PRAYER ...............................39

RULE 52.3(J) CERTIFICATION ...............................40

RULE 9.4 CERTIFICATE OF COMPLIANCE ...............................41

CERTIFICATE OF SERVICE ...............................42

APPENDIX ...............................43

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Title Co. of Houston v. Bomac Mortgage Holdings, L.P.*,
196 S.W.3d 903 (Tex. App.—Dallas 2006, pet. granted, judgm't vacated
w.r.m.) ..................................................................................................................18

*Axelson v. McIlhany*,
798 S.W.2d 550 (Tex. 1990, orig. proceeding) ...................................................33

*Bates v. Sunshare RV, Ltd.*,
2010 WL 3582487 (Tex. App.—San Antonio Sept. 15, 2010, no pet.) .............23

*Beaumont Bank N.A. v. Buller*,
806 S.W.2d 223 (Tex. 1991) ..............................................................................10

*Boring & Tunneling Co. v. Salazar*,
782 S.W.2d 284 (Tex. App.—Houston [1st Dist.] 1989, orig. proceeding) ......34

*Canton-Carter v. Baylor Coll. of Med.*,
271 S.W.3d 928 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ...............4, 13

*Clanton v. Clark*,
639 S.W.2d 929 (Tex. 1982) .........................................................................11, 26

*Crofts v. Court of Civil Appeals*,
362 S.W.2d 101 (Tex. 1962) ...............................................................................36

*Daniels v. Yancey*,
175 S.W.3d 889 (Tex. App.—Texarkana 2005, no pet.)....................................24

*Dow Chem. Co. v. Garcia*,
909 S.W.2d 503 (Tex. 1995) ...............................................................................34

*Ex parte King*,
819 S.W.2d 944 (Tex. App.—Houston [14th Dist.] 1991) ................................16

*Felker v. Petrolon, Inc.*,
929 S.W.2d 460 (Tex. App.—Houston [1st Dist.] 1996, writ denied)...............24

*First State Bank of Mesquite v. Bellinger & Dewolf, L.L.P.*,
    342 S.W.3d 142 (Tex. App.—El Paso 2011, no pet.) .........................................19

*Francis v. Coastal Oil & Gas Corp.*,
    130 S.W.3d 76 (Tex. App.—Houston [1st Dist.] 2003, no pet.).........................21

*G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Co.*,
    177 S.W.3d 537 (Tex. App.—Dallas 2005, no pet.) ...........................................26

*Greenhalgh v. Serv. Lloyds Ins. Co.*,
    787 S.W.2d 938 (Tex. 1990) ...............................................................................18

*Gunn v. Fuqua*,
    397 S.W.3d 358 (Tex. App.—Dallas 2013, pet. denied).............................12, 19

*Hakemy Bros., Ltd. v. State Bank & Trust Co.*,
    189 S.W.3d 920 (Tex. App.—Dallas 2006, pet. denied)..................12, 18, 19, 23

*Hardin v. Hardin*,
    597 S.W.2d 347 (Tex. 1980) ..........................................................................11, 18

*In re Arthur Andersen, L.L.P.*,
    121 S.W.3d 471 (Tex. App.—Houston [14th Dist.] 2003, orig.
    proceeding) ....................................................................................................29, 31

*In re Bristol–Myers Squibb Co.*,
    975 S.W.2d 601 (Tex. 1998) ...............................................................................15

*In re Butler*,
    270 S.W.3d 757 (Tex. App.—Dallas 2008, orig. proceeding).....................14, 15

*In re Cerberus Capital Mgmt., L.P.*,
    164 S.W.3d 379 (Tex. 2005) (per curiam) ..........................................................11

*In re Columbia Med. Ctr. of Las Colinas*,
    306 S.W.3d 246 (Tex. 2010) (per curiam) ..........................................................11

*In re Conner*,
    458 S.W.3d 532 (Tex. 2015) ...............................................................................31

*In re CSX Corp.*,
    124 S.W.3d 149 (Tex. 2003) ...............................................................................32

*In re D. Wilson Constr. Co.*,
  196 S.W.3d 774 (Tex. 2006) ...................................................................10

*In re Dillard Dep't Stores, Inc.*,
  198 S.W.3d (Tex. 2006) (per curiam).....................................................10

*In re Estate of Henry*,
  250 S.W.3d 518 (Tex. App.—Dallas 2008, no pet.) ...........................11

*In re Huag*,
  No. 14-04-01077-CV, 2005 Tex. App. LEXIS 587, 2005 WL 171456
  (Tex. App.—Houston [14th Dist.] Jan. 27, 2005, orig. proceeding) (mem.
  op. per curiam) ...............................................................................3, 13

*In re Kim*,
  No. 05-14-01344-CV, 2014 Tex. App. LEXIS 11734 (Tex. App.—
  Dallas, Oct. 23, 2014, orig. proceeding)..............................................14

*In re Laibe Corp.*,
  307 S.W.3d 314 (Tex. 2010) (per curiam) ...........................................10

*In re Lewis*,
  No. 14-15-00122, 2015 Tex. App LEXIS 1620 (Tex. App.—Houston [1st
  Dist.] Feb. 19, 2015, orig. proceeding)................................................35

*In re McDonald*,
  424 S.W.3d 774 (Tex. App.—Beaumont 2014, orig. proceeding)....................15

*In re Michelle*,
  335 S.W.3d 808 (Tex. App.—Houston [14th Dist.] 2011, orig.
  proceeding) ........................................................................13, 14, 16

*In re Noble Drilling (Jim Thompson), L.L.C.*,
  449 S.W.3d 625 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) 28, 32

*In re Progressive Cty. Mut. Ins. Co.*,
  No. 05-15-00622-CV, 2015 Tex. App. LEXIS 5009 (Tex. App.—Dallas
  May 15, 2015, orig. proceeding) ..........................................................36

*In re Stern*,
  321 S.W.3d 828 (Tex. App.—Houston [1st Dist.] 2010, no pet.)....................32

*In re Tasby*,
  40 S.W.3d 190 (Tex. App.— Texarkana 2001, orig. proceeding) ....................36

*In re Taylor*,
  113 S.W.3d 385 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) ......15

*Johnson v. Ingram Readymix, Inc.*,
  No. 03-09-00568, 2010 Tex. App.—LEXIS 10268 (Tex. App.—Austin
  Dec. 23, 2010, no pet.)..................................................................................20

*Jones v. Cortes*,
  No. 02-10-00304-CV, 2011 WL 4008021 (Tex. App.—Fort Worth Sept.
  8, 2011, no pet.) ....................................................................................31, 32

*Killam Ranch Properties, Ltd. v. Webb Co.*,
  2008 WL 4958452 (Tex. App.—San Antonio Nov. 19, 2008, no pet.) .............24

*Oistad v. Baker & Hostetler, L.L.P.*,
  No. 01-05-00493-CV, 2006 Tex. App. LEXIS 1639, 2006 WL 488594
  (Tex. App.—Houston [1st Dist.] Mar. 2, 2006, no pet.) (mem. op) ..................27

*Polaris Investment Management Corp. v. Abascal*,
  892 S.W.2d 860 (Tex. 1995) (per curiam) ...............................................13, 38

*Rodriguez v. Cuellar*,
  143 S.W.3d 251 (Tex. App.—San Antonio 2004, pet. dism'd w.o.j.) .........18, 21

*Roskey v. Cont'l Cas. Co.*,
  190 S.W.3d 875 (Tex. App.—Dallas 2006, pet. denied)..................................12

*Ryland Group, Inc. v. White*,
  723 S.W.2d 160 (Tex. App.—Houston [1st Dist.] 1986, no writ) ....................29

*Singleton v. Nw. Tex. Healthcare Sys.*,
  No. 07-03-0552-CV, 2006 Tex. App. LEXIS 1594 (Tex. App.—Amarillo
  Feb. 28, 2006, no pet.) ...................................................................................19

*Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*,
  938 S.W.2d 743 (Tex. App.—Dallas 1996, writ denied)..................................11

*State Bar of Tex. v. Kilpatrick*,
  874 S.W.2d 656 (Tex. 1994) .....................................................................18, 19

x

*Torres v. GSC Enterp., Inc.*,
242 S.W.3d 553 (Tex. App.—El Paso 2007, no pet.) ..........................................23

*Tucker v. Gayle*,
709 S.W.2d 247 (Tex. App.—Houston [14th Dist.] 1986, no writ)...................12

*Varme v. Gordon*,
881 S.W.2d 877 (Tex. App.—Houston [14th Dist.] 1994, writ denied)............29

*Walker v. Packer*,
827 S.W.2d 833 (Tex. 1992) ......................................... 10, 12, 13, 14, 28, 38, 39

**STATUTES**

TEX. R. APP. P. 52 ...............................................................................................14, 16

TEX. R. APP. P. 52.3 ...........................................................................................3, 4, 13

TEX. R. APP. P. 52.3(d)............................................................................................ xiii

TEX. R. APP. P. 52.3(g)................................................................................................1

TEX. R. APP. P. 52.3(j)......................................................................................3, 14, 40

TEX. R. APP. P. 52.3(k)...............................................................................................14

TEX. R. APP. P. 52.3(k)(1)(A) ...................................................................................35

TEX. R. APP. P. 52.4(b)................................................................................................1

TEX. R. APP. P. 52.7(a)(1) .........................................................................................15

TEX. R. APP. P. 52.7(a)(2) .......................................................................................3, 16

TEX. R. APP. P. 52.11(c).............................................................................................1

TEX. R. CIV. P. 38....................................................................................................26

TEX. R. CIV. P. 38(a) ...........................................................................................26, 27

TEX. R. CIV. P. 40....................................................................................................28

TEX. R. CIV. P. 40(b) ................................................................................................29

TEX. R. CIV. P. 63 ................................................... 11, 17, 18, 19, 20, 21, 24

TEX. R. CIV. P. 91a................................................................................7, 27, 28

TEX. R. CIV. P. 91a.5(b) ...............................................................................27

TEX. R. CIV. P. 166.........................................................................................11

TEX. R. CIV. P. 190.4.....................................................................................19

**OTHER AUTHORITIES**

*Practice, Procedure and Review*, 33 REV. LITIG. 469, 475 (2014) .........................28

## STATEMENT OF THE CASE

Real Parties provide the following Statement of the Case because Relator, Sunset Nursing Home, Inc., presented a Statement of the Case that fails to comply with TEX. R. APP. P. 52.3(d) in that it contains argument and certain disputed facts.

| | |
|---|---|
| *Nature of the Underlying Suit:* | Breach of lease and guaranty agreements. The underlying suit is styled *Sunset Nursing Home, Inc. v. Rebecca Ann, Inc., Donald Grether, and Paul Heinig*; Cause No. 72817. |
| *Parties:* | Relator Sunset Nursing Home, Inc. is the Plaintiff in the underlying suit; Real Parties in Interest Rebecca Ann, Inc., Donald Grether, and Paul Heinig are Defendants, Plantation Health Care, Inc. is a Third-Party Defendant, while Sara Richards, Amy Stewart, Stephen Coleman, Country Village Care, Inc., and Grether Health Care Facilities, Inc. were Third-Party Defendants when the action from which relief is requested took place. |
| *Respondent:* | The Honorable Patrick Sebesta, Presiding Judge of the 239th Judicial District Court, Brazoria County, Texas. |
| *Actions from which Relief Requested:* | Respondent's May 5, 2015 order granting Real Parties' Motion to Strike (R. 2); Respondent's September 30, 2014 order limiting production of policies and procedures (R. 37); and Respondent's April 6, 2015 order regarding third-party subpoena to MDS Research Company (R. 58). |
| *Emergency Relief Requested:* | Relators filed an Emergency Motion to Stay Trial Court Proceedings simultaneously with its Petition for Writ of Mandamus, which this Court denied. |

xiii

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues are clear, Real Parties believe oral argument will not materially aid the Court's resolution of Relator's petition for writ of mandamus. If the Court concludes otherwise, however, Real Parties ask that they be allowed to present oral argument in response to Relator's argument.

## <u>REQUEST FOR EXPEDITED CONSIDERATION</u>

This case is currently specially set for trial on <u>August 10, 2015</u>. Accordingly, Real Parties respectfully request expedited consideration of the Petition in light of the imminent trial setting.

## BRIEF REFERENCES

**This brief references the parties as follows:**

| | |
|---|---|
| Relator Sunset Nursing Home, Inc. | "Relator" |
| Real Parties in Interest: | "Real Parties" |

| | |
|---|---|
| Rebecca Ann, Inc. | "RAI" |
| Paul Heinig | "Heinig" |
| Donald Grether | "Grether" |
| Plantation Health Care, Inc. | "Plantation" |

| | |
|---|---|
| Amy Stewart | "Stewart" |
| Sara Richards | "Richards" |
| Country Village Care, Inc. | "CVC" |
| Grether Health Care Facilities, L.L.C. | "GHCF" |

**This brief references the mandamus record as:**

| | |
|---|---|
| Relator's Mandamus Record and Supplemental Mandamus Record[3] | "R. [Tab]" |
| Real Parties' Supplemental Mandamus Record | "Supp. R. [Tab]" |

**This brief references Relator's Petition for Writ of Mandamus and Supplemental Petition for Writ of Mandamus as the "Petition"**

---

[3] By citing to Relator's Mandamus Record, Real Parties do not intend to waive any argument that Relator's Mandamus Record is procedurally and substantively deficient.

## REPLY TO ISSUES PRESENTED

(1)     Respondent correctly struck Relator's Amended Pleadings that (i) sought to add five new parties to the underlying lawsuit less than three months before trial, (ii) was filed over seven months after the deadline for filing an amended petition, and (iii) operated to surprise and unfairly prejudice Real Parties.

(2)     Although it is unclear from what discovery order Relator seeks relief—and whether or not that request for relief is now moot—the trial court properly exercised its discretion in placing appropriate limits on Relator's efforts to burden Real Parties with harassing discovery requests seeking irrelevant and proprietary information outside the scope of the issues presented in this breach of lease dispute.

# STATEMENT OF FACTS

Real Parties take issue with the Relator's statement of facts, which is neither concise (*i.e.*, 25 pages) nor without argument (*e.g.*, "Just as the Grethers blatantly ignored their contractual obligations in an effort to destroy Relator's business, they have consistently ignored their discovery obligations in an effort to hide the truth."), nor material to this mandamus proceeding.[4] Nor are the facts within, for the most part, supported by citation to competent evidence included in the Appendix or record.[5] In some instances the facts asserted are either grossly misleading or omit an obviously important material fact.[6] The following are just a few examples of Relator's deficient factual assertions:

– *"Critically, the Grethers promised to transfer all licenses and subsidy contracts to Sunset…."* Petition, p. 14. Real Parties did not promise to **transfer** all licenses and subsidy contracts. Instead, Real Parties agreed to effectuate a "change" of licenses and subsidy contracts, of which there are multiple ways to accomplish apart from a direct transfer. (R. 69, p. 8) ("Lessee shall cooperate with Lessor in having a change of al licenses and subsidy contracts"). This obligation is further limited to requiring only action that is "reasonably requested by Lessor." *Id.*

– *"[T]he Grethers and their attorney Steve Coleman began actively sabotaging the Sunset facilities, ultimately causing at least hundreds of thousands of dollars in damages."* Petition, p. 17. In addition to being completely immaterial to the issues before the Court, this argument is unsupported by citation to competent evidence and is a gross misstatement of "fact."

---

[4] TEX. R. APP. P. 52.4(b).
[5] TEX. R. APP. P. 52.3(g).
[6] TEX. R. APP. P. 52.11(c).

1

– *"[T]he Grethers refused to transfer the names. . . removed all of the computers from both facilities along with hard copies of patient records, all policy and procedures documentation, equipment, beds, supplies, and other personal property."* Petition, p. 18. Aside from being highly disputed, Relator misrepresents the true nature of its allegations. Relator does not claim that Real Parties removed **all** equipment, **all** beds, and **all** supplies; rather, Relator alleges Real Parties removed "certain records of the nursing facilities and medical equipment," an allegation that is, again, disputed. (R. 48).

– *"[T]he Grethers have resisted producing even documents that they were contractually obligated to deliver under the Leases."* Petition, p. 25. Real Parties have been compliant with the trial court's orders and Relator's requests for discovery, only resisting and objecting when reasonable and necessary. For example, Real Parties made available for Relator's inspection and copying over twenty bankers boxes of patient medical records. (Supp. R. 2). In addition, the "policies and procedures" continually referenced by Relator, despite being highly proprietary documents, were submitted for the trial court's *in camera* review. (Supp. R. 3).

– *"[T]he Grethers insisted on deposing Mr. and Mrs. Smith in a courtroom . . . ."* Petition, p. 26. Another misleading assertion, as the trial court—in response to Relator's demand that the depositions of Relator's representatives be taken in a conference room in the courthouse as opposed to their counsel's office or other suitable location—directed that the depositions of parties occur in a courtroom because the court's conference room was too small. (Supp. R. 4).

– *"[T]he court's order compelled the production of 'all responsive documents,' but counsel's letter indicates that he simply turned over whatever he obtained from MDS, so . . . [Relator] has no way of knowing exactly what documents . . . may have been withheld by the Grethers."* Petition, p. 30. Seemingly implying that the Grethers withheld certain documents produced by MDS in response to the subpoena, Relator omits that Real Parties' counsel's letter states that "**all documents** produced by MDS" were enclosed for *in camera* review. (R. 57).

2

–   *"At the August 29, 2014 hearing, the court ... stated that all deadlines were lifted and that new dates should be set from a new trial date."*   There is no citation to competent evidence to support this assertion, which is disputed.   Relator does not include in the mandamus record a transcript of this hearing, nor does Relator state that no such hearing or record occurred.[7]

–   *"[T]he trial court struck the amended pleadings, essentially freeing all but the original Grether parties (2 defunct companies and the uncle and dad of Sara and Amy) from the consequences of the group's concerted wrongful conduct."*   Petition, p. 28.   Because—at its core— this lawsuit is a commercial lease dispute, Relator initially sued the lessee (Plantation), the sublessee (RAI), and the two personal guarantors (Grether and Heinig).   (R. 82).   These parties remain defendants in the underlying suit, and Relator will have the opportunity to try its case against them for alleged breach of the lease and guaranty agreements.   To imply the trial court has somehow deprived Relator of any potential recourse is as misleading as it is desperate.

Perhaps the best example of Relator's misrepresentations and misstatements in its Statement of Facts is the fact that Relator's Petition fails to comply with TEX. R. APP. P. 52.3.   Rule 52.3(j) requires that the "person filing the petition must certify that he or she has reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record."   Relator wholly failed to include this certification.   Relator's failure to comply with the applicable procedural rules is, by itself, a sufficient reason to deny its petition.[8]

---

[7] *See* TEX. R. APP. P. 52.7(a)(2).

[8] *See In re Huag*, No. 14-04-01077-CV, 2005 Tex. App. LEXIS 587, 2005 WL 171456, *1 (Tex. App.—Houston [14th Dist.] Jan. 27, 2005, orig. proceeding) (mem. op. per curiam) (denying

3

Including, and in addition to the foregoing, Relator makes numerous unfounded factual assertions that are strongly contested and unsupported by the mandamus record. Accordingly, Real Parties put those facts at issue and provide the following Statement of Facts to aid the Court's resolution.

## A. Relator sought to expand the underlying lawsuit from a commercial lease dispute to an overarching conspiracy theory.

RAI is a family-owned business that has been in the nursing home industry for over twenty years. Together with Plantation, RAI leased from Relator the two nursing facilities then known as Village on the Creek, located in Clute, Texas, and Plantation Health Care Center, located in Lake Jackson, Texas (collectively referred to as the "Nursing Facilities"). (R. 69). After operating and maintaining these Nursing Facilities for over twenty years, RAI could no longer afford the escalating rent charged by Relator and necessary improvements to the Nursing Facilities, and thus returned operation of the Nursing Facilities to Relator at the normal expiration of the leases at midnight on April 30, 2011.

In February 2013, almost two years after the transition, and with no prior complaint or demand, Relator suddenly made demand on RAI and the two lease guarantors, Paul Heinig and Donald Grether, alleging various breaches of the lease agreements. (Supp. R. 5). On May 23, 2013, RAI, Grether, and Heinig

---

petition for the sole reason that it did not comply with Rule 52.3); *see also Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 930 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (same).

4

(collectively referred to as the "Original Plaintiffs") instituted this suit as a declaratory judgment action seeking to determine the parties' rights and obligations under certain lease agreements. (R. 80). On June 4, 2013, Relator filed an answer and counterclaim asserting claims for breach of contract and fraud by misrepresentation. (R. 81). Several months passed, and in October 2013—two years and five months after the expiration of the lease agreements—Relator filed its First Amended Answer, Counterclaim and Third-Party Petition, asserting for the first time claims against Third-Party Defendant Plantation, along with the following additional causes of action against the Original Plaintiffs: (1) conversion; (2) estoppel; (3) misappropriation of confidential information; (4) promissory estoppel; (5) fraud in a real estate transaction; (6) conspiracy, (7) ratification; (8) tortious interference with contractual relations; and (9) joint enterprise. (R. 82).

## B. Relator engaged in virtually unimpeded discovery throughout the litigation.

The trial court entered a Docket Control Order on April 2, 2014 (the "DCO"), establishing a trial date in October 2014 and the completion of discovery by August 30, 2014. (R. 60). When the first trial setting was pushed back to April 2015, the parties agreed to continue limited necessary discovery (*i.e.*, depositions) into March. (Supp. R. 6).

Throughout the course of the lawsuit, Relator has taken over 15 depositions and served over 260 requests for production and 60 interrogatories, in addition to sending third-party subpoenas to 6 different entities or individuals. *Id*. Moreover, Relator has filed over a dozen motions to compel.

Undeterred in its abusive and harassing pursuit of discovery in the underlying case, Relator continued to serve discovery requests (91 requests for production and seven interrogatories) even after the discovery deadline passed. *Id*. The Original Parties objected to these requests as untimely, unduly burdensome, and harassing and filed a motion for protection to prevent Relator from conducting any additional discovery. *Id*.

Notably, the trial court has not denied **any** of Relator's motions to compel.[9] To date, the only limitation Respondent has placed on Relator's discovery efforts involves the *in camera* submission of certain documents subject to several of Relator's motions to compel, which Relator now protests and contends is an abuse of the trial court's discretion. *See* Petition, pp. 61–74.

## C. The trial court correctly granted Real Parties' Motion to Strike.

The DCO entered in April 2014 established June 12, 2014 as the deadline for all parties to amend their pleadings and, by necessary implication, add any new parties. (R. 60). On January 27, 2015, over seven months after the established

---

[9] Presumably, this is why Relator fails to identify a single discovery order from which it asks this Court to grant relief.

deadline to amend pleadings had passed and less than three months prior to the preferential trial setting, Relator filed its Second Amended Answer, Fifth Amended Counterclaim and Fourth Amended Third-Party Petition[10] (R. 48) and Supplement (Supp. R. 7) that not only alleged claims against the Original Parties that had already been dismissed via summary judgment (*e.g.*, conversion, misappropriation of confidential information, and tortious interference with contractual relations) (R. 37), but also asserted frivolous numerous claims against five new parties: Country Village Care, Inc., Grether Health Care Facilities, L.L.C., Sara Grether Richards, Amy Grether Stewart, and Steve Coleman (collectively referred to as the "New Parties"), all without seeking leave to do so. (R. 48).

Accordingly, Real Parties filed a Motion to Strike the Amended Pleadings. In a clear effort to use Rule 91a to skirt the established rules of amended pleadings, Relator then filed its Second Amended Answer, Fifth Amended Counterclaim and Fourth Amended Third-Party Petition.[11] (R. 49). Real Parties filed a Supplemental Motion to Strike to encompass both untimely and prejudicial pleadings[12] (R. 50), which the trial court appropriately granted. (R. 2).

---

[10] Relator erroneously titled this pleading. It should have been named the *"Fourth* Amended Counterclaim and *Third* Amended Third-Party Petition."

[11] Because Relator erroneously titled the pleading filed on January 27, Relator did not change the name of this pleading filed on April 21, 2015.

[12] Relator's Second Amended Answer, Fourth Amended Counterclaim and Third Amended Third-Party Petition and Supplement (erroneously named "Fifth Amended Counterclaim and Fourth Amended Third-Party Petition") filed on January 26, 2015 (R. 48) and Relator's Second

7

## SUMMARY OF THE ARGUMENT

This mandamus proceeding demonstrates the extraordinary lengths to which a party will go in a tactical attempt to prolong and expand the course and burden of litigation. At its core, this has been and remains a commercial lease dispute arising from a transition in the operation of two nursing homes upon the expiration of long-term lease agreements for two nursing facilities located in Brazoria County. Yet Relator has attempted—at all costs—to inflate its claims with fanciful theories of fraud, conspiracy, and monopolization. When the trial court properly rejected Relator's efforts to grossly distort the true nature of the case, Relator filed this Petition.

First, Relator attempted to entirely transform the character of this commercial lease dispute by seeking to add five new parties and thirty-eight new causes of action less than three months before trial. The trial court properly rejected this untimely, unfair, and unnecessary pleading and Relator has wholly failed to demonstrate an abuse of discretion in that regard.

Similarly, Relator engaged in abundant discovery with little, if any, limitation by the trial court. Although it is unclear from what discovery order Relator seeks relief—and whether or not that request for relief is now moot—the trial court properly exercised its discretion to place appropriate limits on Relator's

Amended Answer, Fifth Amended Counterclaim and Fourth Amended Third-Party Petition filed on April 21, 2015 (R. 49) will be collectively referred to as the "Amended Pleadings."

efforts to burden Real Parties with harassing discovery requests seeking irrelevant and proprietary information belonging to one or more of the Real Parties.

Ultimately, this Petition is a model example of Relator's conduct throughout this litigation that seeks to divert this Court's attention and resources to a procedurally deficient and ultimately meritless request for mandamus relief that should be denied.

## STANDARDS OF REVIEW AND APPLICABLE LAW

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion, and that there is no adequate remedy by appeal.[13] With respect to the resolution of factual issues committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court.[14] Nor may the reviewing court issue mandamus merely because it disagrees with the trial court's decision if the decision was within the trial court's discretionary authority.[15] Instead, the reviewing court must defer to the trial court's resolution of factual issues and may not set aside unless the relator establishes that the trial court could have reasonably reached only one decision.[16] Even if the reviewing court would have decided the issue differently, it may not disturb the trial court's decision unless that decision is shown to be arbitrary and unreasonable.[17]

On the other hand, a trial court has no discretion in determining what the law is or applying the law to the facts.[18] A trial court only abuses its discretion if it

---

[13] *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam).

[14] *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

[15] *Beaumont Bank N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

[16] *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d, 778, 780 (Tex. 2006) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 839–40.

[17] *Walker*, 827 S.W.2d at 840.

[18] *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding).

reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law.[19]

The decision to accept or reject an amended pleading is an inherently discretionary function of the trial court.[20] A party generally has a right to amend its pleadings freely.[21] As the rules of civil procedure reflect, however, this general freedom to amend pleadings must be balanced against the right of the trial court to control its docket in a manner that permits the efficient administration of justice.[22] Similarly, a trial court has a duty to schedule cases in a manner that will result in the expeditious resolution of disputes.[23] An appellate court must not interfere with the trial court's discretion to manage its docket without a clear showing of abuse.[24] A trial court's decision on a motion for leave to amend pleadings must be evaluated in the context of the record of the entire case, and the potential for delay in the ultimate disposition of a case caused by a proposed amendment may be considered in determining whether the trial court has abused its discretion.[25] Thus,

---

[19] *In re Columbia Med. Ctr. of Las Colinas*, 306 S.W.3d 246, 248 (Tex. 2010) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).

[20] *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980).

[21] *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 747 (Tex. App.—Dallas 1996, writ denied).

[22] *See* TEX. R. CIV. P. 63 (pleadings, responses of pleas offered for filing after such time as may be ordered under rule 166 shall be filed only after obtaining leave of the judge).

[23] *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982) (noting trial court's dismissal of case was justified because trial court was experiencing great difficulty in obtaining compliance of appellant's attorney with the trial court's schedule).

[24] *In re Estate of Henry*, 250 S.W.3d 518, 526 (Tex. App.—Dallas 2008, no pet.).

[25] *Smith Detective Agency*, 938 S.W.2d at 749.

11

an appellate court will review a trial court's decision whether to grant leave to file an amended pleading for abuse of discretion.[26]

In addition, the "trial court has great latitude to order or deny discovery, and its action cannot be set aside unless there is a clear showing of abuse of discretion."[27] The denial of discovery will entitle the relator to mandamus relief only if (1) the relator can establish that the relator's ability to present a viable claim or defense is "vitiated or severely compromised" by the trial court's discovery order, or (2) the denial of discovery will render it impossible for an appellate court to evaluate the effect of the trial court's error because the undiscovered information cannot be made a part of the record.[28] To determine whether mandamus is appropriate, the reviewing court must carefully consider all relevant circumstances, such as the claims and defenses asserted, the type of discovery sought, what the discovery is intended to prove, and the presence or lack of other discovery.[29] Delay, inconvenience, or expense of an appeal are insufficient to satisfy this requirement. Rather, the relator must demonstrate "the effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial

---

[26]*See Roskey v. Cont'l Cas. Co.*, 190 S.W.3d 875, 879 (Tex. App.—Dallas 2006, pet. denied). The trial court's enforcement of its scheduling order is also reviewed for abuse of discretion. *Id.*; *Gunn v. Fuqua*, 397 S.W.3d 358, 377 (Tex. App.—Dallas 2013, pet. denied) (citing *Hakemy Bros., Ltd. v. State Bank & Trust Co.*, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, pet. denied)).

[27] *See Tucker v. Gayle*, 709 S.W.2d 247, 249 (Tex. App.—Houston [14th Dist.] 1986, no writ).

[28] *Walker v. Packer*, 827 S.W.2d 833, 843–44 (Tex. 1992).

[29] *Id.* at 844.

would be a waste of judicial resources."[30]  Moreover, mandamus will not issue unless the undiscovered information "goes to the heart of a party's case."[31]

## ARGUMENT

### I.   Relator's Petition and Accompanying Record Are Procedurally Deficient.

"Those seeking the extraordinary remedy of mandamus must follow the applicable procedural rules."[32]  Here, Relator's Petition is procedurally deficient in the following ways, each of which independently supports dismissal.

First, Relator wholly failed to make the requisite certification to this Court that the factual statements in the petition are all supported by competent evidence included in the Appendix or record.[33]  The reason for this is apparent.  Relator's petition is woven together with half-truths and material omissions that paint a distorted picture that is unsupported by the facts.  Relator's failure to comply with this requirement alone is a sufficient reason to deny its petition.[34]

---

[30] *Id*. at 843.
[31] *Id*.;  *see also Polaris Investment Management Corp. v. Abascal*, 892 S.W.2d 860, 861–62 (Tex. 1995) (per curiam) (mandamus did not issue because discovery did not go "to the heart" of relator's case).
[32] *In re Michelle*, 335 S.W.3d 808, 813 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding).
[33] Tex. R. App. P. 52.3.
[34] *See In re Huag*, No. 14-04-01077-CV, 2005 Tex. App. LEXIS 587, 2005 WL 171456, *1 (Tex. App.—Houston [14th Dist.] Jan. 27, 2005, orig. proceeding) (mem. op. per curiam) (denying petition for the sole reason that it did not comply with Rule 52.3); *see also Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 930 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (same).

Relator also fails to provide a sworn copy of the mandamus record. With its Petition, Relator filed its proposed Record on Mandamus consisting of 105 separate documents totaling 2,865 pages, and an additional 10 documents in its Supplemental Mandamus Record. In an attempt to authenticate this proposed record, Relator filed an Affidavit of Felicia Harris dated June 12, 2015, and an Amended Affidavit of Felicia Harris dated June 26, 2015. (R. 1, 1a). However, these affidavits aver only that the "documents numbered 2–115 and included in this Record on Mandamus are true and correct copies." *Id*. However, the affidavits do not swear that the identified documents are "true and correct copies of the pleadings on file in the trial court and the reporter's transcript of the hearings conducted in this matter."[35] Instead, the affidavits merely state the documents are "true and correct copies." (R. 1, 1a). Chief among Relator's burden in a mandamus proceeding is the critical obligation to provide the reviewing court with a complete and adequate record."[36] Because the record in a mandamus proceeding is assembled by the parties,[37] this Court must strictly enforce the requirements of Rule 52 of the Texas Rules of Appellate Procedure to ensure the integrity of the

---

[35] *See In re Kim*, No. 05-14-01344-CV, 2014 Tex. App. LEXIS 11734, *2 n.1 (Tex. App.—Dallas, Oct. 23, 2014, orig. proceeding) (noting that authentication requirements in mandamus proceeding must be strictly enforced); *see also In re Butler*, 270 S.W.3d 757, 759 (Tex. App.—Dallas 2008, orig. proceeding) (finding affidavit insufficient to authenticate record because it did not state affiant had "personal knowledge the copy of the order in the appendix is a correct copy of the original.").

[36] *In re Le*, 335 S.W.3d 808, 813 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding)).

[37] *See* TEX. R. APP. P. 52.3(j), 52.3(k).

14

mandamus record.[38]   Here, Relator has wholly failed to provide a properly authenticated record for the Court to review and consider, and the Petition should be denied on that basis alone.[39]

Even if Relator properly authenticated its mandamus record, the documents included within that record violate the Texas Rules of Appellate Procedure. Under Texas Rule of Appellate Procedure 52.7(a)(1), the Relator must file a "certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying proceeding." In original proceedings, the court focuses on the record before it when the decision was made.[40]   Here, Relator erroneously relies on documents that were not part of the trial court record, are not material to the Relator's claim for relief, and were not filed in any underlying proceeding. Specifically, out of the 105 documents Relator included in the record, only 40 meet those requirements and could be considered part of the mandamus record.[41]   For example, Relator includes a 230-page document described as "RAI's 2010 State Cost Reports for the Clute and Lake Jackson Facilities." (R. 8). Aside

---

[38] *See, e.g., In re Butler*, 270 S.W.3d 757, 759 (Tex. App.—Dallas 2008, orig. proceeding).

[39] *See In re Butler*, 270 S.W.3d at 759 (denying petition for writ of mandamus because "relators' petition and record are not authenticated as required by the Texas Rules of Appellate Procedure").

[40] *See In re Bristol–Myers Squibb Co.*, 975 S.W.2d 601, 605 (Tex. 1998) (orig. proceeding); *In re Taylor*, 113 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) (appellate court will not consider exhibits that were not part of the trial court record at the time of the hearing on the motion that is subject to the mandamus proceeding); *In re McDonald*, 424 S.W.3d 774, 781 (Tex. App.—Beaumont 2014, orig. proceeding) (considering exhibit offered into evidence).

[41] An index of these documents is included in Tab A of the Appendix.

from its questionable relevance, there is nothing to indicate this document was filed in any underlying proceeding, and certainly not the proceedings at issue in this Petition. Accordingly, to the extent the Court considers Relator's mandamus record to be properly authenticated, only a limited subset of 40 of the 105 documents within that record should be considered by this Court.

Finally, a relator seeking extraordinary relief under Rule 52 of the Texas Rules of Appellate Procedure must accompany the petition with either an authenticated transcript of any relevant testimony from any underlying proceeding or a statement that no testimony was adduced in connection with the matter.[42] In absence of such a transcript, the court considering the petition for extraordinary relief presumes that there existed evidence to support the trial court's decision.[43] Here, Relator challenges the trial court's order granting Real Parties' Motion to Strike. Yet, Relator fails to provide a statement that no testimony or evidence was presented to the trial court in connection with Real Parties' motion. Consequently, Relator failed to comply with Rule 52.7(a)(2), and this Court must presume that the trial court had before it evidence to support its decision and deny Relator's request for mandamus relief.[44]

---

[42] TEX. R. APP. P. 52.7(a)(2).
[43] *Ex parte King*, 819 S.W.2d 944, 946 (Tex. App.—Houston [14th Dist.] 1991) (original proceeding involving a petition for writ of habeas corpus).
[44] *In re Michelle*, 335 S.W.3d 808, 813 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) ("But, in the final analysis, this court cannot and will not find an abuse of discretion on an incomplete record.").

16

**II.    Respondent Did Not Abuse His Discretion in Granting Real Parties' Motion to Strike Relator's Amended Pleadings.**

On the very next day following an unsuccessful mediation, Relator filed the first of its Amended Pleadings, seeking to add five new parties to the underlying lawsuit less than three months before trial and over seven months after the deadline for filing amended pleadings. Not only did the trial court correctly strike the Amended Pleadings and the baseless claims that Relator sought to add at the eleventh hour, but Relator has failed to meet its heavy burden of establishing the trial court clearly abused its discretion in doing so. Accordingly, this Petition must be denied.

**A.    Respondent correctly dismissed Relator's Amended Pleadings.**

The trial court could have granted Real Parties' Motion to Strike and dismissed the Amended Pleadings under any one of a number of different grounds, all of which are supported by the record.

**1.    The Amended Pleadings violate Rule 63.**

Under Rule 63 of the Texas Rules of Civil Procedure, "Parties may amend their pleadings . . . at such time as not to operate as a surprise to operate as a surprise to the opposite party." Rule 63 contains an important limitation on the amendment of pleadings—the amended pleading may not unfairly prejudice or

17

operate as a surprise to the opposing party.[45]  Under Rule 63, a trial court may refuse an amendment if (1) the opposing party presents evidence of surprise or prejudice, *or* (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment.[46]

Relator contends in its Petition that a discussion of "prejudice" has "no place in a Rule 63 analysis."  Although Rule 63 does not expressly mention "prejudice," any assessment of "surprise" must necessarily include an evaluation of "prejudice."[47]  As the Dallas Court of Appeals noted:

> Under ***rules 63*** and 66, a trial judge has no discretion to refuse an amendment unless the opposing party presents evidence of ***surprise or prejudice*** or the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment.[48]

Even if the "surprise or prejudice" standard did not apply in a typical Rule 63 analysis, it certainly applies when the challenged pleading is filed after the date

---

[45] *See* TEX. R. CIV. P. 63; *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939–41 (Tex. 1990);  *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980) (trial court may conclude that amendment on its face is calculated to surprise).

[46] *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 657 (Tex. 1994);  *Greenhalgh*, 787 S.W.2d at 939.

[47] *See Hakemy Bros. Ltd. v. State Bank & Trust Co.*, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, no pet.) (holding that "the opposing party's objection is sufficient to show surprise" when the trial court concludes the amendment is on its face calculated to surprise or that the amendment would reshape the cause of action, ***prejudicing*** the opposing party and unnecessarily delaying the trial.") (emphasis added).

[48] *See Am. Title Co. of Houston v. Bomac Mortgage Holdings, L.P.*, 196 S.W.3d 903, 909 (Tex. App.—Dallas 2006, pet. granted, judgm't vacated w.r.m.) (emphasis added); *see also Rodriguez v. Cuellar*, 143 S.W.3d 251, 258 (Tex. App.—San Antonio 2004, pet. dism'd w.o.j.).

18

set in a scheduling order.[49] A party may amend its pleadings up to seven days before trial, or within the time required under a pretrial order.[50] After the time for filing amended pleadings has passed, the trial court abuses its discretion in denying leave to file an amended pleading unless (1) the party opposing the amendment presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment.[51] Here, the trial court has entered only one DCO, which necessarily established June 12, 2014 as the deadline to add new parties.[52] (R. 60). The June 12, 2014 deadline passed without Relator adding any new parties or new claims. (R. 60). Although Relator contends the trial court lifted the deadlines within the DCO, Relator cannot point to a single citation in the record to

---

[49] *See Gunn v. Fuqua*, 397 S.W.3d 358, 377–79 (Tex. App.—Dallas 2013, pet. denied) (amended pleading filed after date set in pretrial order was properly denied when amendment was prejudicial because it asserted new causes of action).

[50] TEX. R. CIV. P. 63; *Hakemy Bros., Ltd. v. State Bank & Trust Co.*, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, pet. denied).

[51] *First State Bank of Mesquite v. Bellinger & Dewolf, L.L.P.*, 342 S.W.3d 142, (Tex. App.—El Paso 2011, no pet.) (citing *State Bar v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994) (per curiam)); *see also Hakemy Bros. Ltd. v. State Bank & Trust Co.*, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, no pet.) (holding that "the opposing party's objection is sufficient to show surprise" when the trial court concludes the amendment is on its face calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial.").

[52] Relator asserts that because the DCO did not contain a date for the deadline to add new parties, there was no such deadline. Courts have rejected that argument. *See, e.g., Singleton v. Nw. Tex. Healthcare Sys.*, No. 07-03-0552-CV, 2006 Tex. App. LEXIS 1594, *14 n.6 (Tex. App.—Amarillo Feb. 28, 2006, no pet.) ("We do not agree with appellant's contention that the scheduling order did not set a deadline for joinder of parties. While the better practice might be to set out separately each of the deadlines mandated by Rule 190.4, the language in the agreed order here setting deadlines by which each party "shall file amended pleadings" necessarily included amended pleadings adding parties.").

support that contention other than the self-serving and post-hoc affidavit of Felicia Harris. Therefore, whether operating under a typical Rule 63 analysis or a late-amended pleading analysis, the trial court was correct to apply the "surprise or prejudice" standard.

Against that backdrop, the record before the trial court reveals the Amended Pleadings operated to surprise the Real Parties. The thirty-eight new causes of action asserted in the Amended Pleadings could not have been anticipated by the Real Parties. (R. 73, 48). For example, the Amended Pleadings asserted, for the first time, "Violations of the Texas Free Enterprise and Antitrust Act" and "Fraudulent Concealment." (R. 48). These claims—and the factual and legal theories behind these claims—were not disclosed to the Original Parties in Relators' response to the Original Parties' Request for Disclosure. (R. 73). Moreover, the Amended Pleadings added five additional parties to the case. (R. 48). Again, these parties were not disclosed to the Original Parties in Relators' disclosures. (R. 73). Nor did Relator identify any of those parties as a potential responsible third party. *Id*. That fact, alone, is enough to support a finding of surprise.[53]

---

[53] *See Johnson v. Ingram Readymix, Inc.*, No. 03-09-00568, 2010 Tex. App.—LEXIS 10268, *17–18 (Tex. App.—Austin Dec. 23, 2010, no pet.) (holding that amended pleading constituted unfair surprise and prejudice when amending party made no effort to make opposing party aware of new claims through relevant discovery responses).

20

In addition, the parties participated in a full-day mediation on January 26, 2015 (the day before the Amended Pleadings were filed), yet prior to such time Relator made no mention of these additional claims and parties at all and issued no formal demands or other correspondence pertaining to these allegations. (R. 73). Instead, Relator laid behind the log and filed the first of its Amended Pleadings *the very next day* following the unsuccessful mediation. (R. 73). These examples alone demonstrate the surprise reflected in the record sufficient to allow the trial court to strike Relator's Amended Pleadings pursuant to Rule 63.

Just as the record adequately demonstrates surprise, there is ample evidence of the prejudice caused by the Amended Pleadings. As an initial matter, the Amended Pleadings are prejudicial on their face.[54] It is obvious that the Amended Pleadings would have detrimentally affected the Real Parties' presentation of the case, as they would have been required to adjust their discovery and trial preparations to include these new claims and new parties in a case that was already on its *third* trial setting. (R. 73). In *Rodriguez v. Cuellar*, the San Antonio Court of Appeals upheld a trial court's decision to strike an amended pleading where the "nature of the case would have been reshaped . . . [thereby] requiring a lengthy trial in which the numerous specific allegations contained in the amended petition

---

[54] *Cuellar*, 143 S.W.3d at 258 (noting that, in the absence of a showing of surprise or prejudice, a court can strike a pleading that "asserts a new basis for the contest and is thus prejudicial on its face.") (citing *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 91 (Tex. App.—Houston [1st Dist.] 2003, no pet.)).

would require testimony from potentially hundreds of individuals on several fact-intensive issues."[55]  The same situation arose here.  Relator attempted to completely transform the true nature of the underlying lawsuit—a commercial lease dispute—into a whirlwind conspiracy theory involving ***thirty-eight*** new causes of action against ***five*** new parties.  Further, the matters asserted in the Amended Pleadings are entirely unrelated to the factual disputes and legal issues that were litigated for almost two years prior to the amendment.  For example, allegations that the Real Parties "entered into a contract, combination and conspiracy to restrain trade and/or commerce" and "made plans to monopolize the skilled nursing facility market in Brazoria County" are entirely unrelated to the central issue in this lawsuit: whether the Original Parties cooperated with Relator to effectuate a change of control of the two nursing facilities under the operative lease agreements, and could not have been reasonably anticipated.  (R. 48).

Perhaps the clearest reflection of the prejudice the Amended Pleadings would have caused is the fact that the discovery deadline and expert disclosure deadlines expired prior to the filing of the Amended Pleadings, with a preferential trial setting just two and a half months away.  (R. 60).  As such, Real Parties would have had no opportunity to develop a defense to the new allegations of conspiracy, attempted monopoly and disruption of free enterprise, fraudulent concealment, and

---

[55] *Id*. at 259.

other outlandish claims.[56]  Accordingly, the Amended Pleadings, which introduced thirty-eight new causes of action and five new parties, are prejudicial—on their face and otherwise—and objectionable based on the unfair surprise and prejudice they caused, and the trial court was correct to strike them from consideration.

### 2. The continuance of the trial date had no effect on the deadline to amend pleadings.

Relator erroneously contends that a continuance of a trial date "vitiates the deadlines in a scheduling order." *See* Petition, p. 52.  However, Relator construes this rule too broadly.  It is true that, absent language to the contrary, a continuance nullifies the previous ***discovery*** deadlines (such as the deadline to supplement responses to discovery requests) or other deadlines directly tied to the trial date (*e.g.* 30 days before trial).[57]  However, a continuance of a trial setting has no effect on deadlines that are ***not*** directly tied to the trial date.  Every case relied on by Relator involves deadlines entirely connected to and dependent upon the trial date.[58]  Relator does not identify any authority holding that the continuance of a

---

[56] *See Hakemy Bros. Ltd. v. State Bank & Trust Co.*, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, no pet.) (concluding trial court did not abuse its discretion in striking amended petition filed one month before trial because "appellees had no opportunity, without a continuance, to designate an expert . . . or conduct additional discovery.").

[57] At least one court of appeals has distinguished "fixed dates established in the scheduling order" from "deadlines [that] are stated in terms of so many days 'before trial,'" and eventually held that "by stating the deadline as 45 days before trial, we believe the parties intended for the dates to be flexible and to operate from the date of the trial, whether it was held on September 30 or some other date." *See Torres v. GSC Enterp., Inc.*, 242 S.W.3d 553, 558 (Tex. App.—El Paso 2007, no pet.).

[58] *See Bates v. Sunshare RV, Ltd.*, 2010 WL 3582487, *1 (Tex. App.—San Antonio Sept. 15, 2010, no pet.) (continuance of trial setting lifted deadline to submit proposed jury instructions

trial date nullifies dates that have already passed and are not discovery-related or expressly tied to the trial date.

Relator also argues that the conduct of both parties otherwise establishes that the deadlines had been lifted. However, Relator misrepresents the true facts. Once the original trial date was postponed to April 2015, the parties attempted to establish—without instruction from the trial court—a subsequent agreed amended docket control order.[59] (R. 73). Relator sent a proposed amended docket control order on December 1, 2014. *Id*. Specifically because Relator attempted to include a blank date for the deadline to add new parties, Real Parties' counsel removed the blank date and sent the revised order back to Relator, stating, "Attached is a revised version of the Amended DCO. We deleted deadlines that have already passed or are inapplicable." *Id*. Then, in an event typical of Relator's conduct throughout the underlying litigation, Relator filed a Motion for Entry of Amended Docket Control Order that misrepresented to the trial court that Real Parties agreed

previously set for the "Monday preceding the week of the trial date"); *Killam Ranch Properties, Ltd. v. Webb Co.*, 2008 WL 4958452, *4 (Tex. App.—San Antonio Nov. 19, 2008, no pet.) (continuance of trial setting lifted deadline to supplement discovery responses previously set for "more than thirty days before the October . . . trial date"); *Felker v. Petrolon, Inc.*, 929 S.W.2d 460, 467 n.9 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (continuance of trial setting lifted deadline to disclose experts); *Daniels v. Yancey*, 175 S.W.3d 889, 893 (Tex. App.—Texarkana 2005, no pet.) (noting that the purpose of the "agreed motion for continuance was to allow discovery after the deadlines previously imposed by the agreed scheduling order.").

[59] Relator argues that, because Relator's counsel and the Real Parties' counsel discussed amending the DCO, and seemed in agreement on a January 30, 2015 deadline for pleading amendments, that the trial court clearly violated Rule 63 by granting the Motion to Strike. But Rule 63 concerns pleading amendments, not the joinder of new parties to a lawsuit. *See* TEX. R. CIV. P. 63. Hence, this argument fails. Moreover, the parties never actually filed a joint motion asking the trial court to set a January 30, 2015 pleadings deadline.

24

to the dates listed in the first proposed amended docket control order that was rejected by Real Parties. (Supp. R. 8). Within this motion, Relator misrepresented that the "parties agree to the dates," and in the certificate of conference, certified that Real Parties "are not opposed" to the entry of Relator's proposed amended docket control order. *Id*. Because Real Parties made clear that they never agreed to that proposed order, Real Parties' counsel emailed Relator's counsel in an attempt to make their position clear:

> As for the line item for new parties we are fine leaving that in so long as we have an agreed understanding that the prior deadline for adding new parties has passed and the blank line in your proposed order does not suggest that is an "open" date.

*Id*. If anything, Relator's conduct throughout this episode reveals that it knew the deadline to add new parties had passed and misled the trial court in an effort to re-open that deadline.

Relator also contends that the Amended Pleadings should be allowed because the Original Parties did not object when Relator amended its petition in September 2014. *See* Petition, p. 33. Of course, this argument ignores the fact that the September 2014 Petition was not made three months before the third trial setting. Nor does the argument consider that the September 2014 Petition was simply an amendment of existing allegations whereas the January 2015 Petition added new parties (and new causes of action) to the suit.

25

Put simply, Real Parties never acted inconsistent with their position that the deadline to add new parties had passed. *Id*. However, Relator's allegations to the contrary, even if true, do not show inconsistency by the trial court in enforcing the scheduling order.[60]

The trial court has a duty to schedule its cases in such a manner as to expeditiously dispose of them.[61] For this reason the court is given wide discretion in managing its docket, and an appellate should not interfere with the exercise of that discretion absent a showing of clear abuse.[62] Because Relator has failed to show such clear abuse, the Petition must be denied.

### 3. The Amended Pleading violates Rule 38.

The trial court could have granted the motion to strike based also on Rule 38 of the Texas Rules of Civil Procedure. Relator admits that the New Parties should have been styled 'additional counter-defendants,' 'cross-defendants,' or something similar," but argues that the new claims asserted in the Amended Pleadings are not third-party claims because "mislabeling them does not change their substantive role in the litigation." *See* Petition, p. 56. However, "[d]ismissal for failure to comply with the procedural requirements of Rule 38(a) is not a dismissal on the

---

[60] *G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 543 (Tex. App.—Dallas 2005, no pet.) (appellant attempted to argue deadline should not be enforced by the trial court because the parties did not follow it; court held that appellant did "not explain and cites no authority showing how the trial court's enforcement of an order disregarded by the parties constitutes an abuse of discretion by the trial court.").
[61] *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982).
[62] *Id*.

26

merits, but rather an exercise of the trial court's discretion in a procedural matter."[63]  Relator labeled the Amended Pleadings as "Third-Party Petition[s]." (R. 48).  Relator admits that it "used 'third-party defendants' to describe the new parties." *See* Petition, p. 56.  The trial court, however, was not required to examine the merits or the substance of the allegations; rather, the trial court properly reviewed the procedural requirements of Rule 38(a) and correctly determined that Relator failed to meet those requirements.  (R. 73).

### 4. Rule 91a did not afford Relator an "absolute right" to file the Amended Pleadings.

In support of its Petition, Relator makes the argument that, because Coleman filed a Rule 91a Motion, Relator had the "absolute right" to amend its petition to add claims and parties.  *See* Petition at pp. 51–52.  Relator bases this contention on Rule 91a.5(b), which provides,

> If the respondent amends the challenged cause of action at least 3 days before the date of the hearing, the movant may, before the date of the hearing, file a withdrawal of the motion or an amended motion directed to the amended cause of action.

TEX. R. CIV. P. 91a.5(b).

Relator's argument fails because nothing in the language of Rule 91a limits or negates a trial court's broad discretion to determine joinder of parties and amendments of petitions.  An interpretation of Rule 91a that decreases a trial

---

[63] *See Oistad v. Baker & Hostetler, L.L.P.*, No. 01-05-00493-CV, 2006 Tex. App. LEXIS 1639, 2006 WL 488594, at *3 (Tex. App.—Houston [1st Dist.] Mar. 2, 2006, no pet.) (mem. op).

court's ability to avoid unnecessary delays would be contrary to the purpose of the Rule, which is to help clear busy dockets congested with spurious claims, thereby increasing fairness in the legal system.[64] Moreover, Relator completely ignores the fact the Coleman expressly made his Rule 91a motion subject to the Motion to Strike. (R. 74). Accordingly, Relator failed to demonstrate that the trial court erred by disallowing amendment pursuant to Rule 91a.

## B. Relator has not met its heavy burden of establishing the trial court clearly abused its discretion by striking the Amended Pleadings.

### 1. Considering the facts and circumstances of the suit, the trial court did not clearly abuse its discretion.

To be entitled to the extraordinary remedy of mandamus relief, a relator must demonstrate that (1) the trial court clearly abused its discretion, and (2) the relator has no adequate remedy by appeal.[65] Moreover, Relator has the burden to present the appellate court with a record sufficient to establish the right to mandamus.[66]

Relator attempts to rely on Texas Rule of Civil Procedure 40 governing the permissive joinder of parties as defendants to a lawsuit.[67] However, Rule 40

---

[64] *See* Timothy Patton, *Motions to Dismiss Under Texas Rule 91a: Practice, Procedure and Review*, 33 REV. LITIG. 469, 475 (2014) ("[A]n early dismissal procedure would, among other things, protect defendants from frivolous and costly lawsuits, strengthen the economy, and enhance the fairness of the court system.").

[65] *In re Noble Drilling (Jim Thompson), L.L.C.*, 449 S.W.3d 625, 630 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding).

[66] *Walker v. Packer*, 827 S.W.2d 833, 837–39 (Tex. 1992) (orig. proceeding).

[67] TEX. R. CIV. P. 40.

further demonstrates the discretion allotted to the trial court on issues of joinder. Stated succinctly, a trial court has great discretion to determine joinder of parties.[68] This discretion includes the power to make a determination that a party's joinder will delay a trial whose date has already been set.[69] A trial court's decision on joinder should be based on practical considerations with a view to what is fair and orderly, including whether joinder will unreasonably delay the trial under the facts and circumstances of the suit.[70]

Relator's Amended Pleadings are nothing more than an obvious attempt to delay trial and avoid an inevitable result. It was certainly foreseeable to Relator that if it brought Coleman into the suit, he would be represented by his own counsel, and it would be unmanageable for Coleman's counsel to catch up on 20 months of litigation in the few months before trial. Although Coleman acted as legal counsel to certain Real Parties, his interests in this lawsuit are not necessarily aligned with their interests. It is unreasonable to expect Coleman to mount a defense to far-fetched claims that he helped orchestrate or implement a conspiracy to monopolize the market for Medicare-reimbursed services in Brazoria County in the two and a half months remaining before trial. Coleman could reasonably be

---

[68] *See In re Arthur Andersen, L.L.P.*, 121 S.W.3d 471, 483 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding); *Ryland Group, Inc. v. White*, 723 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1986, no writ).

[69] *See* TEX. R. CIV. P. 40(b); *Varme v. Gordon*, 881 S.W.2d 877, 883 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

[70] *In re Arthur Andersen L.L.P.*, 121 S.W.3d at 483.

expected to deem it necessary to retake the depositions of parties and witnesses who have already been deposed, particularly given the significant change in the character of the lawsuit and the specter of individual liability. Moreover, Coleman and his counsel are entitled to sufficient time to review all of the existing discovery responses and document production and Relator's experts' reports to determine whether to serve additional discovery requests and retain his own experts. All of these items will take considerable time and add significant expense to the lawsuit for all parties.

In its Mandamus Petition, Relator attempts to avoid these arguments by asserting that all opposing parties, erroneously including Coleman, are represented by the same counsel. *See* Petition, p. 50. But even among the Real Parties that are represented by the same counsel, Relator overlooks the fact that two of those parties were sued in their individual capacities (Sara Richards and Amy Stewart). (R. 48). Those individual defendants will have separate, distinct, and potentially adverse defensive strategies. Two other parties (GHCF and CVC) are wholly separate and distinct companies. The potential for individual exposure of those individuals and entities on new theories and claims that seek to transform the entire character of the case, and the commensurate need to analyze, evaluate, and prepare corresponding defenses, is unreasonable given the near trial setting.

Additionally, considering the circumstances and history of the lawsuit, the trial court reasonably determined it would unfairly and unreasonably delay trial to permit the joinder of the new parties at this late date.[71] As explained above, this lawsuit was filed in May 2013 and the potential for Coleman, Richards, Stewart, GHCF, and CVC to be a party was known to Relator at the time. Nevertheless, Relator did not attempt to add these persons or entities as parties for another 20 months, on the day after a failed mediation and with less than three months before the second trial setting.

Based on these circumstances, the trial court acted properly—and surely did not clearly abuse its discretion—by striking the Amended Pleadings, thereby permitting the case to be tried to the jury at its August 10, 2015 trial setting as the commercial lease dispute that it has been and remains, without additional unnecessary delay and expense.[72]

### 2. Relator has not met its heavy burden of establishing no adequate remedy by appeal.

Even assuming Relator could prove the trial court clearly abused its discretion by striking the pleadings, Relator still is not entitled to mandamus relief

---

[71] *See In re Arthur Andersen L.L.P.*, 121 S.W.3d at 483 (explaining trial court's decision whether to permit joinder must be based on circumstances and history of specific case at hand).

[72] *See In re Conner*, 458 S.W.3d 532, 534 (Tex. 2015) ("Trial courts are generally granted considerable discretion when it comes to managing their dockets."); *Jones v. Cortes*, 02-10-00304-CV, 2011 WL 4008021, at *6 (Tex. App.—Fort Worth Sept. 8, 2011, no pet.) ("We conclude that the trial court's concern about adding Carolina as a defendant within sixty days of the trial was reasonable because doing so could have delayed the trial date, which had already been rescheduled several times.").

unless Relator has no adequate remedy by appeal.[73] The heavy burden of establishing an inadequate appellate remedy is on Relator.[74]

Out of 78 pages of argument, Relator gives only scant treatment to the "no adequate remedy by appeal" requirement. *See* Petition, pp. 59–60. Relator's sole argument in this regard is that "the trial court dismissed parties that have been, for all practical purposes, equal participants in the case to date." *Id*., p. 60. According to Relator, "if the case proceeds to trial against only a portion of the interrelated parties, the potential for a subsequent proceeding to correct the court's error is tremendous." *Id*. In other words, Relator is arguing that there is a tremendous chance that, because of the trial court's error in striking the pleadings, an appellate court will reverse the trial court's judgment and remand for a new trial. Hence, Relator acknowledges it will have the opportunity to appeal the trial court's ruling on the motion to strike in a few short months after a final judgment is rendered following the August trial.[75] Clearly, Relator has not met its heavy burden of establish no adequate remedy by appeal. Directly to the contrary, Relator's Petition recognizes the existence of an adequate remedy by appeal.

---

[73] *In re Noble Drilling (Jim Thompson), L.L.C.*, 449 S.W.3d at 630.

[74] *In re Stern*, 321 S.W.3d 828, 837 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003)).

[75] *See, e.g., Jones v. Cortes*, 02-10-00304-CV, 2011 WL 4008021, at *6 (Tex. App.—Fort Worth Sept. 8, 2011, no pet.) (determining on appeal from final judgment that trial court did not abuse discretion by striking petition that added new party).

**III. The Trial Court Has Not Abused Its Discretion in Setting Proper Limits on Relator's Abusive and Harassing Discovery Efforts.**

Relator claims that the trial court "erred in restricting Relator's access to and use of discovery facts and documents." *See* Petition, p. 61. Although Relator fails to clearly set forth the exact relief it is requesting, any mandamus relief issued by this Court would be improper for several reasons. First, several issues raised by Relator have been rendered moot by the trial court's action. Next, on many issues Relator fails to identify the written orders from which it seeks relief. To the extent Relator does identify a written order, that order encompasses proper restrictions set by the trial court on Relator's discovery fishing crusade that should not be disturbed by this Court.

**A. Several issues raised by Relator are moot.**

First, Relator complains that it has been denied access to documents produced by non-party MDS Research Company pursuant to a third-party subpoena. Specifically, Relator states that "whatever MDS documents [that] were produced remain *in camera*,"[76] and Relator asserts that it "still awaits release of the documents by the court." *See* Petition, p. 69. Curiously, the Petition notes that

---

[76] Relator implies several times that it was an abuse of discretion for the trial court to *sua sponte* order documents to be produced for *in camera* review. Not only do trial courts have the inherent authority to review documents *in camera*, but denying discovery of potentially relevant documents **without** reviewing them *in camera* is an abuse of discretion. *See Axelson v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990, orig. proceeding) (holding that it was an abuse of discretion to deny discovery of potentially relevant documents without reviewing them in camera).

33

Relator's counsel was contacted by the trial court "the day before" the Petition was filed and told that the in camera documents were available for her inspection, reflecting that Relator's complaints are both premature and potentially unfounded. *See* Petition, p. 70. Indeed, on June 17, 2015, six days after the filing of this Petition, the court coordinator notified the parties that Relator's counsel "came down today and looked at the documents that were submitted for *in camera* inspection" and "advised the court that she wants copies of all the documents." (Supp. R. 9). The next week, the trial court confirmed on the record that Relator reviewed and copied the very same MDS Research Company documents at issue in this Petition. (Supp. R. 1). Accordingly, the relief requested by Relator relating to the MDS Research Company documents is moot, and the Petition should be denied in that respect.[77]

Relator also asserts that the "trial court denied [Relator] the use of a contemporaneous appraisal of the facilities" after Relator requested the documents

---

[77]*See Boring & Tunneling Co. v. Salazar*, 782 S.W.2d 284, 285 (Tex. App.—Houston [1st Dist.] 1989, orig. proceeding) (denying relator's petition as moot when trial court judge allowed production and disclosure of certain disputed documents that had been previously withheld from production); *see also Dow Chem. Co. v. Garcia*, 909 S.W.2d 503, 505 (Tex. 1995) ("[W]e will not issue mandamus if for any reason it would be useless or unavailing). Notwithstanding the mootness of this issue, Relator's request is deficient for several other reasons. First—and made apparent by the trial court's subsequent ruling—Relator's request for mandamus relief was premature. Relator admits that "[j]ust the day before this filing, the trial court indicated that [Relator's] counsel could come view the *in camera* documents, and that he would decide whether [Relator] could have them after [Relator] told him which ones it wanted." *See* Petition, p. 70. Even so, Relator's asks this Court to "compel MDS's full compliance with the subpoena." This is a wholly inappropriate demand for relief, as this Court's only jurisdiction on mandamus is to order the respondent—in this case, the trial court—to take certain action.

and the trial court ordered them produced *in camera*.  *See* Petition, p. 73.  Without requesting any specific relief, Relator notes that the appraisals "remain *in camera* while [Relator] their production [sic]."  *Id*. p. 74.  Like the MDS Research Company records, the trial court confirmed that Relator reviewed and copied the appraisals on June 17, 2015.  For the same reasons, this issue is now moot.

**B.   Relator fails to identify specific orders from which it requests relief.**

When a relator files a petition for writ of mandamus, the relator must file a copy of the order which the relator challenges with the petition.[78]  A relator is not entitled to mandamus relief unless it the order it challenges is included within the appendix.[79]  Here, Relator argues that (1) the "trial court clearly abused its discretion in refusing to order production of the 'Discharge books," (2) "refused to allow [Relator] to substantiate its claim that the Grethers hired and/or transferred employees" by failing to order production of "communications between CVC . . . and any employees of the two leased facilities," and (3) refused to compel Gayle Jacobs, a non-party to the underlying action, to "confirm the nature of her employment."  *See* Petition, pp. 72–74.  However, Relator does not include within the appendix or anywhere else within the mandamus record any orders reflecting this alleged denial of discovery.  Instead, Relator notes that the "trial court still

---

[78] TEX. R. APP. P. 52.3(k)(1)(A).
[79] *Id*.; *see In re Lewis*, No. 14-15-00122, 2015 Tex. App LEXIS 1620, *1 (Tex. App.—Houston [1st Dist.] Feb. 19, 2015, orig. proceeding) (denying petition for writ of mandamus when relator failed to include a certified or sworn copy of the order he challenged).

refuses to rule on the motion" to compel the above documents and information. *Id.*, p. 73. Because the trial court has "not yet advised the parties of its ruling on the motion . . . at this juncture, there is no ruling of the trial court that [this Court] may evaluate for abuse of discretion and adequacy of appellate remedy."[80]

It is unclear whether Relators asks this Court to order the trial court to make a ruling, but even so, because the trial court has not ruled, then a request to rule is necessarily inconsistent with Relator's complaint that the trial court has abused its discretion in failing to rule. While this Court may, by mandamus, direct the trial court to make a decision, it "may not tell the trial court what that decision should be."[81] Accordingly, Relator has failed to establish a right to the relief requested related to the discharge books and employee communications.

## C. The Court set proper limits on Relator's request for immaterial and irrelevant policies and procedures.

Finally, Relator complains that the trial court's September 30, 2014 order "only permitted Relator's counsel's review at the courthouse jury room" and effectively denied "copies to use in depositions, attach as exhibits to motions, analyze with Relator's experts, or to read and review with its office staff, or use at trial." *See* Petition, p. 63.

---

[80] *See In re Progressive Cty. Mut. Ins. Co.*, No. 05-15-00622-CV, 2015 Tex. App. LEXIS 5009, *1 (Tex. App.—Dallas May 15, 2015, orig. proceeding).

[81] *Id.* at *2 (citing *Crofts v. Court of Civil Appeals*, 362 S.W.2d 101, 104 (Tex. 1962); *In re Tasby*, 40 S.W.3d 190, 191 (Tex. App.— Texarkana 2001, orig. proceeding).

Relator has made only one argument with respect to the discoverability of the Real Parties' policies and procedures: the Real Parties allegedly "contracted to turn over these documents." *See* Petition, p. 64 and (R. 36). Putting aside the fact that Real Parties dispute that any one of them agreed to surrender highly proprietary written policies and procedures that were created and customized for use at the two nursing facilities over twenty years, the ***substance*** of the policies and procedures is not relevant to a single issue in the underlying suit. (Supp. R. 10). Relator does not allege that Real Parties failed to follow their policies and procedures. It is undisputed that the Real Parties removed their own policies and procedures from the two facilities upon termination of the lease, and that Relator purchased its own policies and procedures for use upon the termination of the leases. The dispute is whether or not Real Parties were entitled to remove their documents at the expiration of the lease terms, and the necessity for Relator to purchase their own policies and procedures, but there is no dispute relating to the specific language or the substance of any of the proprietary documents.

Accordingly, the trial court acted appropriately—and certainly did not abuse its discretion—when it ordered the policies and procedures produced for *in camera* review. (R. 37). By allowing only Relator's counsel to review them, the trial court effectively designated the policies and procedures "Attorneys' Eyes Only" and prevented the disclosure of the proprietary material therein. Such action is clearly

37

permitted by the protective order entered in the underlying case. (R. 38). Unsurprisingly, Relator points to no authority that the trial court's action in this regard is an abuse of discretion, and the Court should deny the Petition.

**D.** **Relator has not demonstrated that it lacks an adequate remedy by appeal.**

To determine whether mandamus is appropriate in lieu of an appeal, the reviewing court must carefully consider all relevant circumstances, such as the claims and defenses asserted, the type of discovery sought, what the discovery is intended to prove, and the presence or lack of other discovery.[82] Delay, inconvenience, or expense of an appeal are insufficient to satisfy this requirement. Rather, the relator must demonstrate "the effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial would be a waste of judicial resources."[83] Moreover, mandamus will not issue unless the undiscovered information "goes to the heart of a party's case."[84]

Here, Relator makes the conclusory assertion that the trial court's "discovery rulings (or lack thereof) here have denied [Relator] a reasonable opportunity to develop the merits of its case." *See* Petition, p. 62. Relator alleges nothing more than inconvenience and delay, and certainly points to no citation or evidence in the

---

[82] *Walker v. Packer*, 827 S.W.2d 833, 844 (Tex. 1992).

[83] *Id*. at 843.

[84] *Id*.; *see also Polaris Investment Management Corp. v. Abascal*, 892 S.W.2d 860, 861–62 (Tex. 1995) (per curiam) (mandamus did not issue because discovery did not go "to the heart" of relator's case).

38

record to demonstrate further harm. The Texas Supreme Court has held that the denial of discovery will entitle a relator to mandamus relief only if (1) the relator can establish that the relator's ability to present a viable claim or defense is "vitiated or severely compromised" by the trial court's discovery order, or (2) if the denial of discovery will render it impossible for an appellate court to evaluate the effect of the trial court's error because the undiscovered information cannot be made a part of the record.[85] Relator has failed to meet that burden here, and the Court must deny Relator's request for mandamus relief.

## CONCLUSION AND PRAYER

For the foregoing reasons, Real Parties in Interest Rebecca Ann, Inc., Donald Grether, Paul Heinig, Plantation Health Care, Inc., Sara Richards, Amy Stewart, Country Village Care, Inc., and Grether Health Care Facilities, Inc. respectfully request that the Court deny Relator's petition for writ of mandamus and grant Real Parties in Interest such other relief, in law or equity, to which they may be shown to be justly entitled.

---

[85] *Walker*, 827 S.W.2d at 843–44.

39

**JACKSON WALKER L.L.P**.

Respectfully submitted,

*/s/ Breck Harrison*

Breck Harrison
State Bar No. 24007325
bharrison@jw.com
Scott W. Weatherford
State Bar No. 24079554
sweatherford@jw.com
100 Congress Ave., Ste. 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – Fax

**ATTORNEYS FOR REAL PARTIES IN
INTEREST, REBECCA ANN, INC.,
DONALD GRETHER, PAUL HEINIG,
PLANTATION HEALTH CARE, INC.,
SARA RICHARDS, AMY STEWART,
GRETHER HEALTH CARE
FACILITIES, L.L.C., AND COUNTRY
VILLAGE CARE, INC.**

## RULE 52.3(J) CERTIFICATION

I have reviewed this Response to Relator's Petition for Writ of Mandamus and conclude that every factual statement is supported by competent evidence the mandamus record.

*/s/ Breck Harrison*

Breck Harrison

40

## RULE 9.4 CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 10,810 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Breck Harrison*

Breck Harrison

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on the following counsel of record electronically through the electronic filing manager as well as by electronic mail delivery on June 26, 2015:

Brandy R. Manning
Felicia Harris
Burleson L.L.P.
700 Milam, Suite 1100
Houston, Texas 77002
brmanning@burlesonllp.com
fharris@burlesonllp.com

*Counsel for Relator*

The Honorable Patrick Sebesta
239th Judicial District Court
Brazoria County, Texas
111 E. Locus, Room 310A
Angleton, Texas 77515
debbies@brazoria-county.com

*Respondent*

Zandra Foley
Andrew Johnson
Thompson, Coe, Cousins & Irons,
L.L.P.
One Riverway, Suite 1400
Houston, Texas 77056
zfoley@thompsoncoe.com
ajohnson@thompsoncoe.com

*Counsel for Stephen M. Coleman*

*/s/ Breck Harrison*
Breck Harrison

42

# NO. 01-15-00530-CV

IN THE COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS AT HOUSTON

*In re* **Sunset Nursing Home, Inc.,**

*Relator*

Original Proceeding on Petition for Writ of Mandamus
from Cause No. 72817 in the 239th Judicial District
Court of Brazoria County, Texas
(Hon. Patrick Sebesta, Presiding)

## APPENDIX

**TAB** **DOCUMENT**

A        Revised Index of Record.

# TAB A

| TAB | DOCUMENT |
|---|---|
| 2 | Consolidated Order from Judge Sebesta, signed May 5, 2015 |
| 28 | Sunset Nursing Home Inc.'s Motion to Compel Plaintiff's Production of Documents, filed March 14, 2014 |
| 31 | Order, signed April 2, 2014 |
| 35 | Sunset Nursing Home Inc.'s (1) Motion for Sanctions, filed August 25, 2014; (2) Supplemental Motion for Sanctions, filed September 15, 2014; and (3) Second Supplemental Motion for Sanctions, filed September 19, 2014 |
| 36 | Sunset Nursing Home Inc.'s Motion to Compel Plaintiff and Counter-Defendants' Production of Documents, filed May 21, 2014 |
| 37 | Order, signed September 30, 2014 re: RAI's policies and procedures |
| 38 | Agreed Protective Order, signed November 25, 2013 |
| 39 | Hearing transcript, March 24, 2015 |
| 42 | Plaintiffs' Motion to Quash Deposition of Steve Coleman, filed July 9, 2014 |
| 45 | Motion to Quash Sara Richards Deposition, filed October 23, 2014 |
| 47 | Plaintiffs' Motion to Compel Mediation, filed on December 5, 2014 |
| 48 | Sunset Nursing Home, Inc.'s Second Amended Answer, Fifth Amended Counterclaim and Fourth Amended Third-Party Petition, filed on January 26, 2015 |
| 49 | Sunset Nursing Home Inc.'s Second Amended Answer, Fifth Amended Counterclaim and Fourth Amended Third-Party Petition, filed on April 21, 2015 |
| 50 | Plaintiffs' and Third-Party Defendants' Supplemental Motion to Strike and for Sanctions, dated April 22, 2015 |
| 54 | Sunset's Supplemental Combined Motion to Compel, served on January 23, 2014 |
| 55 | Non-Party Country Village Care, Inc.'s Motion for Protection (Subpoena: MDS Research), filed on February 16, 2015 |
| 56 | Hearing transcript (re: subpoena served on MDS Research Company), dated February 24, 2015 |
| 57 | Correspondence, dated March 30, 2015, from Scott Weatherford to Judge Sebesta re: MDS Research documents for *in camera* inspection |
| 58 | Order, signed April 6, 2015, re: MDS Research documents for *in camera* inspection |
| 59 | Sunset Nursing Home, Inc.'s Motion for Entry of Proposed Docket Control Order, filed March 11, 2014 |
| 60 | Docket Control Order, signed April 2, 2014 |

| | |
|---|---|
| 61 | Hearing transcript, June 23, 2014 |
| 62 | Sunset Nursing Home, Inc.'s Motion to Compel, Supplemental Motion for Amended Docket Control Order and Motion for Continuance, filed August 21, 2014 |
| 68 | Sunset Nursing Home, Inc.'s (1) No Evidence and Traditional Motion for Partial Summary Judgment, filed February 13, 2015, and (2) Reply in Support of No-Evidence and Traditional Motion for Partial Summary Judgment, filed on February 24, 2015 |
| 69 | Sunset Nursing Home, Inc.'s Second Amended Answer, Fourth Amended Counterclaim and Third Amended Third-Party Petition, filed September 18, 2014 |
| 71 | Plaintiffs' Motion to Quash Amy Stewart Deposition, filed on January 26, 2015 |
| 73 | Plaintiff and Third-Party Defendants' Motion to Strike and for Sanctions, filed February 13, 2015 |
| 74 | Third-Party Defendant Stephen M. Coleman's Rule 91a Motion to Dismiss, filed March 18, 2015 |
| 75 | Sunset Nursing Home, Inc.'s Supplemental Opposition to Motion to Strike, filed on April 27, 2015 |
| 76 | Third-Party Defendant Stephen M. Coleman's Notice of Withdrawing Rule 91a Motion to Dismiss, filed on April 22, 2015 |
| 80 | Plaintiffs' (RAI, et al.) Original Petition, filed on May 23, 2013 |
| 81 | Defendant's (Sunset) Answer to Plaintiffs' Original Petition and Counterclaim, filed on June 4, 2013 |
| 82 | Sunset Nursing Home, Inc.'s First Amended Answer, Counterclaim and Third-Party Petition, filed on October 29, 2013 |
| 83 | Original Answer of Country Village Care, Inc., Grether Health Facilities, L.L.C., Sara Richards and Amy Stewart, filed on February 23, 2015 |
| 85 | Sunset Nursing Home, Inc.'s Motion to Reconsider (Policies and Procedures *in camera* ruling), filed September 17, 2014 |
| 93 | Correspondence, dated October 31, 2014, from Felicia Harris to Judge Sebesta re: depositions scheduling |
| 94 | Correspondence, dated September 25, 2014, from Felicia Harris to Judge Sebesta attaching Proposed Order on Motions to Compel |
| 95 | Correspondence, dated December 10, 2014, from Felicia Harris to Judge Sebesta re: Plaintiffs' Motion to Compel Mediation |
| 101 | Third-Party Defendant Stephen M. Coleman's Original Answer and Request for Disclosure, filed February 23, 2015 |
| 104 | Correspondence, dated February 17, 2015, from Felicia Harris to Judge |

| | |
|---|---|
| | Sebesta re *in camera* review of 2010 appraisal documents |
| 105 | Sunset Nursing Home, Inc.'s (1) Consolidated Motion to Compel from the Grethers, filed March 17, 2015 and (2) Supplemental Motion to Compel, filed March 19, 2015 |